**In the Interest of D.S., a minor.**

**Appeal of D.S., a minor.**

**No. 1220 MDA 2010.**

Superior Court of Pennsylvania.

Submitted May 16, 2011.
Filed Oct. 5, 2011.

Cheryl A. Sobeski–Reedy, Public Defender, Wilkes–Barre, for appellant.

Jacqueline M. Carroll, Assistant District Attorney, Wilkes–Barre, for Commonwealth, appellee.

BEFORE: PANELLA, SHOGAN, and COLVILLE*, JJ.

OPINION BY PANELLA, J.

Appellant, D.S., a minor, appeals from the Dispositional Order entered on May 27, 2010, by the Honorable David W. Lupas, Court of Common Pleas of Luzerne County.[1] We affirm.

* Retired Senior Judge assigned to the Superior Court.

1. We note that although Appellant purports to appeal from an order entered July 1, 2010, this appeal properly lies from the Juvenile Division Court Order entered May 27, 2010. We have amended the caption accordingly.

For a recitation of the facts and procedural history of this case, we direct the reader to Judge Lupas's 1925(a) opinion. *See* Trial Court Opinion, 12/28/10, at 1–3 (unnumbered).

On appeal, D.S. challenges the Dispositional Order entered by the trial court following several probationary violations. D.S. claims, *inter alia,* that a less restrictive placement would better serve his immediate mental health needs and rehabilitation. Appellant's Brief, at 2.

> The Juvenile Act grants broad discretion to the court in disposition. *In the Interest of A.D.,* 771 A.2d at 53 (citing 42 Pa.C.S.A. §§ 6341, 6352; *In re Love,* 435 Pa.Super. 555, 646 A.2d 1233 (1994)). This Court will not disturb a disposition absent a manifest abuse of discretion. *Love,* 646 A.2d at 1238. The purpose of the Juvenile Act is as follows:
>
>> Consistent with the protection of the public interest, to provide for children committing delinquent acts programs of supervision, care and rehabilitation which provide balanced attention to the protection of the community, the imposition of accountability for offenses committed and the development of competencies to enable children to become responsible and productive members of the community.
>
> 42 Pa.C.S.A. § 6301(b)(2). "This section evidences the Legislature's clear intent to protect the community while rehabilitating and reforming juvenile delinquents." *In the Interest of J.C,* 751 A.2d at 1181.

*In re L.A.,* 853 A.2d 388, 394 (Pa.Super.2004).

With the above standard of review in mind, we have examined the certified record, the briefs of the parties, the trial court's opinion, and the applicable law, and we find that the trial court ably addressed the issues presented on appeal. Accordingly, we affirm on the basis of the trial court's well-written memorandum opinion. *See* Trial Court Opinion, 12/28/10.

Order affirmed. Jurisdiction relinquished.

COLVILLE, J., files a Concurring Opinion.

SHOGAN, J., files a Dissenting Opinion.

## CONCURRING OPINION BY COLVILLE, J.:

I join the Majority. Appellant asks this Court to consider one question regarding the propriety of his dispositional order. I agree with the Majority that the trial court's opinion adequately addresses and properly rejects Appellant's arguments; specifically, I agree that the court did consider Appellant's rehabilitative needs in fashioning the dispositional order.

While the Dissent may raise valid concerns as to whether the trial court failed to adhere to several Rules of Juvenile Court Procedure, Appellant did not present any appellate issues with respect to these alleged failures. Thus, I cannot agree that Appellant is entitled to relief thereupon.

## DISSENTING OPINION BY SHOGAN, J.:

The Majority affirms the dispositional order in this case on the basis of the juvenile court opinion. It is undisputed that the Juvenile Act grants broad discretion to the trial courts in implementing dispositions. *In re L.A.,* 853 A.2d 388, 394 (Pa.Super.2004). Thus, a reviewing court will not disturb the disposition implemented by the lower court absent "a manifest abuse of discretion." *In re Love,* 435 Pa.Super. 555, 646 A.2d 1233, 1238 (1994). Despite this deferential standard of review, however, delinquency proceedings must be conducted in compliance with the Pennsylvania Rules of Juvenile Court Pro-

cedure. Pa.R.J.C.P. 100A. These rules are intended to provide for the just determination of every delinquency proceeding. Pa. R.J.C.P. 101A. After thoroughly reviewing the certified record in this case, I have significant concerns about how the juvenile court addressed this matter and compiled the certified record, including whether it faithfully adhered to the rules. Accordingly, I am constrained to respectfully dissent.

The Pennsylvania Rules of Juvenile Court Procedure establish uniform practice and procedure for courts exercising jurisdiction under the Juvenile Act and are to "be construed to secure uniformity and simplicity in procedure, fairness in administration, and the elimination of unjustifiable expense and delay." Pa.R.J.C.P. 101B. Rule 512 addresses dispositional hearings convened following adjudications of delinquency and provides, in part, as follows:

 **A. Manner of hearing.** The court shall conduct the dispositional hearing in an informal but orderly manner.

 *(1) Evidence.* The court shall receive any oral or written evidence which is helpful in determining disposition, including evidence that was not admissible at the adjudicatory hearing.

 *(2) Opportunity to be heard.* Before deciding disposition, the court shall give the juvenile and the victim an opportunity to be heard.

* * *

 **B. Recording.** The dispositional hearing shall be recorded.

* * *

 **D. Court's findings.** The court shall enter its findings and conclusions of law into the record and enter an order pursuant to Rule 515. On the record in open court, the court shall state:

 (1) its disposition;

 (2) the reasons for its disposition;

 (3) the terms, conditions, and limitations of the disposition; and

 (4) if the juvenile is removed from the home:

 (a) the name or type of any agency or institution that shall provide care, treatment, supervision, or rehabilitation of the juvenile, and

 (b) its findings and conclusions of law that formed the basis of its decision consistent with 42 Pa.C.S. §§ 6301 and 6352, including why the court found that the out-of-home placement ordered is the least restrictive type of placement that is consistent with the protection of the public and best suited to the juvenile's treatment, supervision, rehabilitation, and welfare;

 (5) whether any evaluations, tests, counseling, or treatments are necessary;

 (6) any findings necessary to ensure the stability and appropriateness of the juvenile's education, and when appropriate, the court shall appoint an educational decision maker pursuant to Rule 147; and

 (7) any findings necessary to identify, monitor, and address the juvenile's needs concerning health care and disability, if any, and if parental consent cannot be obtained, authorize evaluations and treatment needed.

Pa.C.J.C.P. 512.

Rule 515 of the Rules of Juvenile Court Procedure addresses the dispositional orders to be entered following an adjudication of delinquency and a determination that the juvenile is in need of treatment, supervision, or rehabilitation. Rule 515 provides, in pertinent part, as follows:

 **A. Generally.** When the court enters a disposition after a[n] adjudication of delinquency pursuant to Rule 409(A)(2) [ (*i.e.,* a determination that the juvenile

is in need of treatment, supervision or rehabilitation) ], the court shall issue a written order, which provides balanced attention to the protection of the community, accountability for the offenses committed, and development of the juvenile's competencies to enable the juvenile to become a responsible and productive member of the community. The order shall include:

(1) the court's findings pursuant to Rule 512(D);

(2) a designation whether the case is eligible pursuant to 42 Pa.C.S. § 6307(b)(1)(i) for limited public information;

(3) a directive that the juvenile shall submit to fingerprinting and photographing by, or arranged by, the law enforcement agency that submitted the written allegation in all cases in which the juvenile has not previously been fingerprinted or photographed;

(4) the date of the order; and

(5) the signature and printed name of the judge entering the order.

Pa.R.J.C.P. 515.

Once a dispositional order is in place, Rule of Juvenile Court Procedure 612 addresses subsequent modification or revocation of probation and provides, in relevant part, as follows:

A. **Filing.** A motion to modify or revoke probation shall be filed in accordance with Rule 345 [ (addressing procedures for filing and service of motions) ].

\* \* \*

C. **Modification.** If the court modifies the dispositional order, the court shall state the grounds for the modification and shall issue a new dispositional order in accordance with Rule 515.

Pa.R.J.C.P. 612. The comment to Rule 612 states: "A juvenile should be afforded due process before probation can be revoked."

Thus, the rules are specific with regard to the juvenile court's handling of a dispositional hearing, the subsequent order to be entered, and any subsequent modifications sought. In addition, the Pennsylvania Rules of Juvenile Court Procedure are specific with regard to the compilation of the certified record. Rule 166 addresses maintaining records in the clerk of courts, and provides, in pertinent part, as follows:

A. **Generally.** The juvenile court file is the official court record and shall contain all court orders, court notices, docket entries, filed documents, evidence admitted into the record, and other court designated documents in each juvenile case. These records shall be maintained by the clerk of courts and shall not be taken from the custody of the clerk of courts without order of the court.

B. **Docket entries.** The clerk of courts shall maintain a list of docket entries: a chronological list, in electronic or written form, of documents and entries in the official court record and of all proceedings in the case. The clerk of courts shall make docket entries at the time the information is made known to the clerk.

C. **Contents of docket entries.** The docket entries shall include, at a minimum, the following information:

\* \* \*

(3) notations concerning all papers filed with the clerk, including all court notices, appearances, admissions, motions, orders, findings and adjudications, and dispositions, briefly showing the nature and title, if any, of each paper filed, writ issued, and motion made, and the substance of each order or disposition of the court and of the returns showing execution of process;

(4) notations concerning motions made orally or orders issued orally in the courtroom when directed by the court;

(5) a notation of every judicial proceeding, continuance, and disposition;

\* \* \*

(7)(a) the date of receipt in the clerk's office of the order or court notice;

(b) the date appearing on the order or court notice; and

(c) the date and manner of service of the order or court notice; and

(8) all other information required by Rule 345 [ (relating to filing and service of motions) ].

Pa.C.J.C.P. 166.

My review of the record reflects that, although the juvenile court conducted two proceedings relevant to Appellant's conduct, including an adjudication and disposition on December 1, 2009 and a revocation of probation and disposition on May 27, 2010, the certified record is devoid of necessary documents which it is incumbent upon the juvenile court to enter and record.

As a point of reference, I set forth the following relevant procedural history of this case, which is reflected in the certified record. On December 1, 2009, Appellant was adjudicated delinquent on a charge of theft by unlawful taking. On that same day, the juvenile court entered an order of disposition pursuant to Rule 515, which placed Appellant on probation for an indefinite period of time. *See* Certified Record, Unnumbered Order dated 12/1/09, immediately preceding record item # 2.

On May 27, 2010, the juvenile court held another dispositional hearing due to allegations of Appellant's probation violations. *See* N.T., 5/27/10, at 1. However, I must observe that the record lacks any motion for modification or revocation of probation as required by Rule 612A. Moreover, there is no docket entry in the certified record indicating that such a motion had been filed, or the date on which such motion had been filed as required by Rule 166. Rather, the only indication that the May 27 hearing was held to address probation violations was a mention by the juvenile court of the allegations of probation violation at the outset of the hearing. *See* N.T., 5/27/10, at 2. Furthermore, the record lacks *any* indication of a motion for modification or revocation of probation that complied with the procedures for filing and servicing motions under Rule 345, as mandated by Rule 612A.

In addition to the complete lack of a motion for revocation of probation in the record or a docket entry indicating the filing of such a motion, I must also remark on the fact that, at the conclusion of the May 27 revocation hearing, the juvenile court modified the dispositional order, but failed to state the grounds for the modification as required by Rule 612C. N.T., 5/27/10, at 19. More strikingly, my review of the record reflects no written dispositional order in the certified record subsequent to the May 27 hearing imposing a new disposition that included a transfer to St. Michael's.[1] Likewise, there is no nota-

---

1. There is, appended to Appellant's brief filed with this Court, a form order titled: "Juvenile Division Court Order" dated May 27, 2010. This order does not appear in the certified record. Moreover, portions of the form order have not been completed. Specifically, the order does not reflect the "type of hearing" which precipitated the order. Also, the order does not address remanding Appellant to PA Child Care until he is transferred

to St. Michael's diagnostic facility for an indefinite time as indicated by the juvenile court at the May 27, 2010 hearing. N.T., 5/27/10, at 21. According to Appellant's brief, he was ultimately taken to St. Michael's where he remained committed. The order does, however, "remand" Appellant to "Lehigh Cty Juvenile Detention Center." This

tion in the docket of a dispositional order having been entered as required by Rule 166. Thus, I am left to conclude that the juvenile court abused its discretion, by failing to enter the appropriate dispositional order in accord with Rule 612 and Rule 515.

This disregard for the controlling rules of juvenile court procedure is inexcusable. The juvenile court's failure to properly compose and docket appropriate orders runs afoul of the rules promulgated by our Supreme Court, which are intended to ensure the just determination of every delinquency proceeding. Rather than affirm the disposition of the lower court on the basis of the juvenile court's memorandum authored pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), I believe the more prudent approach for this Court would be to vacate any order of May 27, 2010, regarding Appellant's placement in secure detention and subsequent transfer to St. Michael's.

I must also state my concerns with the juvenile court's handling of the wishes of Appellant's mother regarding placement of Appellant. Specifically, I believe that the juvenile court abused its discretion when it did not thoroughly address or consider the mother's misgivings about placement at St. Michael's and the mother's preference that Appellant be placed at Camp Adams. N.T., 5/27/10, at 7–8. Moreover, I cannot ignore the fact that the record does not reflect proper service of a motion to revoke probation as required under Rules 612 and 345. Thus, I am left to conclude that Appellant and his family may not have been given appropriate due process and the ability to secure vital information pertaining to placement options available. For this reason, too, I am compelled to reach the determination that the juvenile court abused its discretion in handling the revocation of probation and in directing a

commitment was not mentioned at the hear-

new dispositional order. Accordingly, I would vacate any disposition order of May 27, 2010, release Appellant from St. Michael's residential facility if he is still there, and remand this case for a new disposition proceeding consistent with the Pennsylvania Juvenile Act and the Rules of Juvenile Court Procedure.

## APPENDIX

## COMMONWEALTH OF PENNSYLVANIA

### 11th JUDICIAL DISTRICT

IN THE INTEREST OF D.S., a minor, Juvenile Appellant

IN THE COURT OF COMMON PLEAS OF LUZERNE COUNTY

*JUVENILE DIVISION*

No. JV–235 of 2009

### *OPINION*

BY: THE HONORABLE DAVID W. LUPAS

I. *FACTS AND PROCEDURAL HISTORY:*

This matter came before the Court for a Probation Violation Hearing for the above Juvenile on May 27, 2010. Prior to this date on December 1, 2009, the Juvenile appeared before this Court for an Adjudication Hearing on a charge of Theft by Unlawful Taking, 18 Pa.C.S.A. § 3921(b), a misdemeanor of the first degree. (Adj. N.T. page 2) After a thorough colloquy of the Juvenile by the Court, we accepted his admission to the offense as voluntarily and knowingly made. (Adj. N.T. pages 2–5) With no objection from defense counsel to an immediate disposition, this Court proceeded to receive recommendations relative to the same. (Adj. N.T. pages 5–6)

ing held on May 27, 2010.

 

The Luzerne County Juvenile Probation Department recommended D.S. be placed on indefinite probation with participation in the TRAACS program to provide structure, and with Northeast Counseling to help regulate his medication and assist with behavioral issues. Said recommendation was made due to the Juvenile's repeated curfew violations and attendance problems at school. He also had behavior problems at both home and school. (Adj. N.T. page 6) We accepted the recommendation and placed the Juvenile on indefinite probation. (Adj. N.T. page 9)

Less than six months later, on May 27, 2010, the Juvenile again appeared before this Court on allegations of probation violations. The Juvenile, through his counsel, admitted to violating the terms of his probation in that he had numerous and consistent absences from school, violated curfew, and failed to regularly meet with his case manager. (Violation & Disposition N.T. page 3) More specifically, his probation officer noted that at the time of the hearing, D.S. missed ninety eight (98) days of school. It was also reported to the Court that the Juvenile's mother had concerns about the children her son was associated with, as well as concerns for the other children in her home because of D.S.'s behavior. (Violation & Disposition N.T. pages 5-6) Based upon the foregoing, a recommendation was made to this Court that D.S. be placed in St. Michael's Diagnostic Program where he would receive a full-scale evaluation for his mental health, drug and alcohol, educational, and behavioral needs. (Violation & Disposition N.T. pages 6-7)

At the time of the May 27th hearing, the Juvenile's mother objected to the placement at St. Michael's because she "knows kids that came out of that home that had marks on them". Instead, the mother requested that her son be sent to Camp Adams. (Violation & Disposition N.T. pages 7-8) She later testified that she would "rather him do life in prison" than be housed at the detention center pending his transfer to St. Michael's. (Violation & Disposition N.T. page 21) It should be noted that the Juvenile's counsel advised the Court that the Juvenile's mother has mental health issues of her own, and her caseworker was present in court that day. (Violation & Disposition N.T. page 22) It should be further noted that the Juvenile's mother could not and did not substantiate the allegations made about St. Michael's.

On June 4, 2010, the Juvenile filed a Post Disposition Motion seeking the vacation and reconsideration of this Court's Order for placement at St. Michael's. The Commonwealth filed a response in opposition on June 8, 2010. Upon consideration of the aforementioned Motion and response thereto, by Order of Court dated July 1, 2010, we denied the Juvenile's Post Disposition Motion.

On July 7, 2010, the Juvenile filed a Notice of Appeal. This Court ordered, on July 9, 2010, that the Juvenile file a Concise Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(b) and requested the Commonwealth to file a response to the same. On July 30, 2010, the Juvenile filed a 1925(b) Statement. The Commonwealth filed its response thereto on August 13, 2010.

## II. *LAW AND DISCUSSION:*

The Juvenile, through his attorney, filed a nine (9) paragraph 1925(b) Statement. However, the same can be simplified to three (3) issues raised on appeal as follows: First, that the Court did not consider the least restrictive placement alternative, and said placement of the Juvenile into St. Michael's Diagnostic Program does not properly address the Juvenile's needs. Second, that the Court did not afford the

Juvenile an opportunity to suggest an alternative placement. Third, that the Court's disposition was a punitive measure.

42 Pa.C.S.A. § 6352 (The Juvenile Act) provides as follows:

§ 6352. **Disposition of delinquent child**

(a) **General rule.**—If the child is found to be a delinquent child the court may make any of the following orders of disposition determined to be consistent with the protection of the public interest and best suited to the child's treatment, supervision, rehabilitation, and welfare, which disposition shall, as appropriate to the individual circumstances of the child's case, provide balanced attention to the protection of the community, the imposition of accountability for offenses committed and the development of competencies to enable the child to become a responsible and productive member of the community:

(1) Any order authorized by *section 6351* (relating to disposition of dependent child).

(2) Placing the child on probation under supervision of the probation officer of the court or the court of another state as provided in *section 6363* (relating to ordering foreign supervision), under conditions and limitations the court prescribes.

(3) Committing the child to an institution, youth development center, camp, or other facility for delinquent children operated under the direction or supervision of the court or other public authority and approved by the Department of Public Welfare.

(4) If the child is 12 years of age or older, committing the child to an institution operated by the Department of Public Welfare.

(5) Ordering payment by the child of reasonable amounts of money as fines, costs, fees or restitution as deemed appropriate as part of the plan of rehabilitation considering the nature of the acts committed and the earning capacity of the child, including a contribution to a restitution fund. The president judge of the court of common pleas shall establish a restitution fund for the deposit of all contributions to the restitution fund which are received or collected. The president judge of the court of common pleas shall promulgate written guidelines for the administration of the fund. Disbursements from the fund shall be made, subject to the written guidelines and the limitations of this chapter, at the discretion of the president judge and used to reimburse crime victims for financial losses resulting from delinquent acts. For an order made under this subsection, the court shall retain jurisdiction until there has been full compliance with the order or until the delinquent child attains 21 years of age. Any restitution order which remains unpaid at the time the child attains 21 years of age shall continue to be collectible under *section 9728* (relating to collection of restitution, reparation, fees, costs, fines and penalties).

(6) An order of the terms of probation may include an appropriate fine considering the nature of the act committed or restitution not in excess of actual damages caused by the child which shall be paid from the earnings of the child received through participation in a constructive program of service or education acceptable to the victim and the court whereby, during the course of such service, the child shall be paid not less than the minimum wage of this Commonwealth. In ordering such service, the court shall take into consideration the age, physical and mental capacity of the child and the service shall be designed to impress upon the child a

sense of responsibility for the injuries caused to the person or property of another. The order of the court shall be limited in duration consistent with the limitations in *section 6353* (relating to limitation on and change in place of commitment) and in the act of May 13, 1915 (P.L. 286, No. 177), known as the Child Labor Law. *[FN1]* The court order shall specify the nature of the work, the number of hours to be spent performing the assigned tasks, and shall further specify that as part of a plan of treatment and rehabilitation that up to 75% of the earnings of the child be used for restitution in order to provide positive reinforcement for the work performed.

In selecting from the alternatives set forth in this section, the court shall follow the general principle that the disposition imposed should provide the means through which the provisions of this chapter are executed and enforced consistent with *section 6301(b)* (relating to purposes) and when confinement is necessary, the court shall impose the minimum amount of confinement that is consistent with the protection of the public and the rehabilitation needs of the child.

When fashioning a new disposition for the Juvenile following the Probation Violation Hearing, this Court, without question, considered the Juvenile's treatment, supervision, rehabilitation, and welfare while attempting to impose the minimum amount of confinement required consistent with the protection of the public and the Juvenile's own rehabilitative needs. (See entirety of Violation and Disposition N.T.) Most importantly, we believed that D.S. needed to be placed in a facility where all of his mental health, emotional, and behavioral needs could be assessed. The appropriate facility, and the closest to the Juvenile's home, is St. Michael's Diagnostic Program.

We also noted D.S.'s behavior before the Court on May 27, 2010. He became very upset, agitated, and was flailing his arms following the Court's rendering of its disposition. (Violation and Disposition N.T. page 17) His behavior was an obvious problem for his mother to handle, as she expressed concern for the safety of other children in her home. (Violation and Disposition N.T. page 5) It was equally clear that the Juvenile's mother has mental health issues of her own, which was further reason why this Court ordered the Juvenile committed to the detention center pending placement at St. Michael's. For this reason, we also directed Luzerne County Children and Youth Services to become involved with the Juvenile's family. (Violation and Disposition N.T. page 23)

With respect to this Court's authority to impose the above disposition, the Juvenile Act grants broad discretion to the trial court in fashioning dispositions. *In the Interest of L.A.*, 853 A.2d 388, 394 (Pa.Super.2004), *citing In the Interest of A.D.*, 771 A.2d at 53. A reviewing court will not disturb a lower court's disposition absent a manifest abuse of discretion. *In re Love*, 435 Pa.Super. 555, 646 A.2d 1233, 1238 (1994).

We believe it is plainly obvious after reviewing the record in this matter that we considered and balanced many factors in fashioning the disposition for D.S. This Court finds no evidence to support the allegations of error claimed by the Juvenile.

Moreover, with respect to the allegation that we did not afford the Juvenile an opportunity to suggest an alternative placement, the same is belied by the facts of this case. The Juvenile's mother requested that D.S. be sent to Camp Adams. However, Camp Adams is a different type facility, which may not adequately address the mental health and emotional needs of

the Juvenile. (Violation and Disposition N.T. pages 10–12) In fact, Camp Adams is most definitely a more restrictive alternative than St. Michael's.

In a juvenile proceeding, the hearing judge sits as the finder of fact. *In the Interest of L.A.,* 853 A.2d 388, 394 (Pa.Super.2004), *citing In the Interest of A.D.,* 771 A.2d 45, 53 (Pa.Super.2001). The weight to be assigned the testimony of the witnesses is within the exclusive province of the fact finder. *Id.* In the instant matter, this Court accepted as credible the testimony of the Probation Officer, Thomas Lavan, concerning his opinions and recommendation for placement of the Juvenile.

Additionally, the above authority governing dispositions is similar to that given the trial court in adult criminal cases with respect to sentencing. We are very cognizant of the fact that juvenile proceedings are not criminal proceedings, and the entire juvenile system has different purposes and rules from our criminal system. *In re S.A.S.,* 839 A.2d 1106 (Pa.Super.2003). However, we believe the standard relative to "abuse of discretion" remains the same. An abuse of discretion is not shown merely by an error in judgment. Rather, the Defendant (in the instant matter, a juvenile) must establish, by appropriate reference to the record, that the sentencing judge ignored or misapplied the law, exercised his judgment for reasons of partiality, prejudice, bias, or ill-will, or arrived at a manifestly unreasonable decision. *Commonwealth v. Zurburg,* 937 A.2d 1131 (Pa.Super.2007)

Here, this Court finds no evidence that would suggest that it did not consider the least restrictive placement alternative to address the Juvenile's needs, or that the Court's disposition was ordered as a punitive measure. Rather, all determinations were made with an eye toward helping D.S. not punishing him.

## END OF OPINION