J-A14033-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF T.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: T.W., A MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 872 WDA 2020 |

Appeal from the Dispositional Order Entered July 17, 2020
In the Court of Common Pleas of Washington County Criminal Division at
No(s): CP-63-JV-0000093-2020

| | | |
|---|---|---|
| IN THE INTEREST OF: T.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: T.W., A MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 873 WDA 2020 |

Appeal from the Dispositional Order Entered July 17, 2020
In the Court of Common Pleas of Washington County Criminal Division at
No(s): CP-63-JV-0000253-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: T.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: T.W., A MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 874 WDA 2020 |

Appeal from the Dispositional Order Entered July 17, 2020
In the Court of Common Pleas of Washington County Criminal Division at
No(s): CP-63-JV-0000421-2019

BEFORE: MURRAY, J., KING, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                    **FILED: September 3, 2021**

T.W., a minor (a female born in June 2006), appeals from the Dispositional Order entered following her adjudication of delinquency for retaliation against a witness[1] at CP-63-JV-0000093-2020 ("093-2020"), and the Dispositional Orders revoking her probation at CP-63-JV-0000253-2019 ("253-2019"), and CP-63-JV-0000421-2019 ("421-2019"). We affirm.

In September 2019, T.W. accepted a Consent Decree on charges of hindering apprehension, simple assault, and disorderly conduct at 253-2019. As a result, T.W. was placed on six months of probation.

Regarding 421-2019, on December 7, 2019, two male juveniles, J.W. and C.U.,[2] broke into the home of Stephen Watley ("Watley") and Ashlie Burrup ("Burrup"), where they beat Watley and Burrup with a baseball bat and robbed the couple of money and marijuana. Police alleged that T.W. and S.L., a female juvenile and a friend of T.W., participated in planning the robbery, hiding materials that were used to commit the robbery and contraband taken in the robbery, and assisting J.W. and C.U. escape from police. As a result, the juvenile court adjudicated T.W. delinquent of the

---

[1] 18 Pa.C.S.A. § 4953(a).

[2] J.W. was T.W.'s boyfriend. J.W. and C.U. were charged as adults. In July 2020, J.W. and C.U. each pled guilty to robbery and related charges and were sentenced to an aggregate term of four to eight years in prison.

offenses of aggravated assault with a deadly weapon, criminal conspiracy to commit aggravated assault, criminal conspiracy to commit robbery, hindering apprehension or prosecution, prohibited offensive weapon, possessing instruments of crime, obstructing the administration of law, and possession of a small amount of marijuana.[3]  On December 27, 2019, the juvenile court adjudicated T.W. delinquent at 421-2019, and revoked the Consent Decree at 253-2019.  The juvenile court placed T.W. at Andromeda House, a residential treatment facility for juvenile girls, for an indefinite period of time.  Due to the COVID-19 pandemic, T.W. was released from Andromeda House on April 8, 2020, and placed on indefinite probation.

On May 9, 2020, Officer Zlatan Avdic ("Officer Avdic"), of the Monongahela City Police Department, received a report from S.L. that T.W. had made several posts about S.L. on the Snapchat social media application.[4]  Specifically, T.W.'s posts contained captions reading, "ANYONE WANNA SEE THIS SNITCHES PAPERWORK ?" and "I HAD 17 CHARGES, SHE GOT 0 FOR RATTIN[.]"  Additionally, several of the posts depicted handwritten statements by S.L. and Affidavits of probable cause related to the robbery case.  S.L. told police that unrelated third parties sent her pictures of the posts, and that she

---

[3] 18 Pa.C.S.A. §§ 2702(a)(4), 903(a)(2), 5105(a)(1), 908(a), 907(a), 5101; 35 P.S. § 780-113(a)(31).

[4] S.L. had testified against T.W. at the December 27, 2019, hearing.  Further, S.L. had been asked to testify against J.W. and C.U. at their court proceedings, which at the time were still pending.

recognized the username on the Snapchat page to be T.W.'s. Further, S.L. told police that after T.W. made the posts, she had been receiving threats from other people, including phone calls threatening to fight S.L. S.L. expressed her fear that someone would try to hurt her, as she had not yet testified against J.W. for his role in the robbery case.

As a result of the Snapchat posts, the Commonwealth filed a Delinquency Petition, at 093-2020, with one count of retaliation against a witness, victim, or party. On July 17, 2020, the juvenile court held a merit/violation of probation hearing, where it heard testimony from multiple witnesses, including S.L. On July 20, 2020, the juvenile court entered an Order adjudicating T.W. delinquent on the retaliation charge at 093-2020, finding T.W. to be in violation of her probation, and revoking her probation at 253-2019 and 421-2019. The Order also imposed, as a condition of probation, a prohibition "from the use of social media[,] with the only exception being for defined educational purposes and/or in furtherance of treatment…." Order, 7/20/20, at 2; *see also* N.T., 7/17/20, at 126-27 (wherein the juvenile court explains to T.W. that she is "going to be restricted and prohibited from using social media. And we're going to put this prohibition in place until the next review hearing[,]" and that, because of the COVID-19 pandemic and school being conducted virtually, "[t]he only exclusion and exception to the prohibition would be for things that are utilized for educational purposes or for purposes of working through the therapy….").

T.W. filed timely separate Notices of Appeal,[5] and separate, but identical, court-ordered Pa.R.A.P. 1925(b) Concise Statements of matters complained of on appeal.

T.W. raises the following issues for our review:

1. Did the Commonwealth present insufficient evidence to sustain the charge of retaliation against a witness?

2. Was the finding that [T.W.] committed [r]etaliation [a]gainst a witness against the weight of the evidence?

3. Did the [j]uvenile [c]ourt impose improper conditions of probation?

4. Did the [j]uvenile [c]ourt erroneously find that [T.W.] had violated her probation?

Brief for Appellant at 8.

In T.W.'s first issue, she argues that the Commonwealth presented insufficient evidence to adjudicate her delinquent of retaliation at 093-2020. *Id.* at 13-23. T.W. asserts that she did not directly make threatening communications to S.L.; rather, S.L. only became aware of T.W.'s posts on social media by receiving pictures of the posts from third parties. *Id.* at 13-16. T.W. asserts that the posts she made constituted protected activity under the First Amendment, and that references to the number of charges S.L. was facing and S.L.'s written statements were merely factual statements, not threats. *Id.* at 16-18. Finally, T.W. claims that the Commonwealth failed to

---

[5] On October 6, 2020, this Court entered an Order consolidating T.W.'s appeals *sua sponte*.

properly authenticate the Snapchat posts, and failed to prove that T.W. was the individual who made the posts. *Id.* at 18-23.

Our standard of review is well settled:

> When a juvenile is charged with an act that would constitute a crime if committed by an adult, the Commonwealth must establish the elements of the crime by proof beyond a reasonable doubt. When considering a challenge to the sufficiency of the evidence following an adjudication of delinquency, we must review the entire record and view the evidence in the light most favorable to the Commonwealth.
>
> In determining whether the Commonwealth presented sufficient evidence to meet its burden of proof, the test to be applied is whether, viewing the evidence in the light most favorable to the Commonwealth, and drawing all reasonable inferences therefrom, there is sufficient evidence to find every element of the crime charged. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence.
>
> The facts and circumstances established by the Commonwealth need not be absolutely incompatible with a [juvenile]'s innocence. Questions of doubt are for the hearing judge, unless the evidence is so weak that, as a matter of law, no probability of fact can be drawn from the combined circumstances established by the Commonwealth.

*Interest of D.J.B.*, 230 A.3d 379, 386 (Pa. Super. 2020) (citation omitted).

Retaliation against a witness is defined as follows: "A person commits an offense if [s]he harms another by any unlawful act or engages in a course of conduct or repeatedly commits acts which threaten another in retaliation for anything lawfully done in the capacity of a witness, victim or a party in a civil matter." 18 Pa.C.S.A. § 4953(a).

In its Opinion, the juvenile court addressed T.W.'s challenge to the sufficiency of the evidence as follows:

> During the July 17, 2020[,] hearing, testimony and evidence was presented and produced by the following individuals: Christina Munshower, Juvenile Probation Officer [("Officer Munshower")][;] Juvenille [*sic*] I.B.[;] … S.L.[;] Officer Avdic[;] Shea Michael Patterson[;] and Angelica Mervis. Acceptance of such testimony in a light most favorable to the Commonwealth establishes [r]etaliation against witness, victim or party beyond a reasonable doubt.
>
> [] Officer [] Munshower testified that [T.W.] was charged with [r]etaliation against a witness and a probation violation was filed against [T.W.] Both actions [were] taken after[] Officer Avdic … alleged that [T.W.] posted on Snapchat social media multiple photos that were incriminating against [] S.L., a witness in a previously[-]adjudicated case involving [] T.W., which also involved adult "co-actors" with unresolved criminal cases. [N.T., 7/17/20,] at 9-10. The posted photos, later introduced during the proceeding, depicted the court filings and paperwork with a captions [*sic*] stating, "anyone wanna see the snitch[es] paperwork?" and "I have 17 charges, she got [0]." [*Id.*] at 10. Additional posted pictures included the witness's actual written statements provided to the police department. *Id.* The witness, identified as [] S.L.[,] was established to be a witness in an ongoing criminal robbery investigation involving [J.W. and C.U.] and [T.W.]
>
> Testimony from [] S.L. was also received during the July 17, 2020[,] hearing. S.L. testified that she was "involved in a matter before this court that involved" [T.W.], and [J.W. and C.U.] [*Id.*] at 40. [] S.L. also testified that she "has been asked to testify" against [J.W. and C.U.] *Id.* [] S.L. also positively identified police statements, usernames, written statements and case information that was posted about her and the juvenile case in which she was involved. [*Id.* at 45-48]. Further testimony from [T.W.]'s mother established that [T.W.] posted the court paperwork and statements at issue. [*Id.* at] 104.
>
> Paired with the history of the case, observance of the witnesses' demeanor and evaluation of potential motive and/or bias, perspective and point of view, this [c]ourt opined that the

Commonwealth had established that [T.W.] committed the [j]uvenile [a]ct of [r]etaliation against a witness. This [c]ourt heard the evidence and assessed the credibility of the witnesses who testified during the hearing. The [c]ourt, after careful observation of the witnesses and evidence presented during the course of the proceeding, found sufficient evidence to adjudicate [T.W.] delinquent for [r]etaliation against witness, victim or party, finding the Commonwealth proved every element beyond a reasonable doubt.

Juvenile Court Opinion, 11/2/20, at 3-5.

Upon review, the juvenile court's findings are supported in the record, and its legal conclusions are sound. The evidence, viewed in the light most favorable to the Commonwealth as the verdict-winner, showed that T.W. engaged in a course of conduct, via multiple Snapchat posts, that resulted in threats to S.L., who had testified against T.W. and was planning to testify against J.W. and C.U. in their upcoming proceedings.

Finally, with regard to T.W.'s claim, nested within her sufficiency claim, that the Snapchat posts were not properly authenticated, we adhere to the following standard of review:

The admissibility of evidence is a matter within the sound discretion of the trial court and will be reversed only where there is a clear abuse of discretion. Our standard of review of a challenge to an evidentiary ruling is therefore limited. Abuse of discretion is not merely an error of judgment [but is established only where] the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

***Commonwealth v. Williams***, 241 A.3d 1094, 1101 (Pa. Super. 2020) (citation omitted).

- 8 -

Rule 901 provides, in relevant part, that "[to] satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a). This Court has long recognized that "testimony from a witness who has knowledge that a matter is what it is claimed to be" is sufficient to satisfy the authentication requirement under Rule 901. **Commonwealth v. McKellick**, 24 A.3d 982, 988 (Pa. Super. 2011) (citations and internal quotation marks omitted), **appeal denied**, 34 A.3d 828 (Pa. 2011); **see also** Pa.R.E. 901(b)(1).

> [A]uthentication of social media evidence is to be evaluated on a case-by-case basis to determine whether or not there has been an adequate foundational showing of its relevance and authenticity. Additionally, the proponent of social media evidence must present direct or circumstantial evidence that tends to corroborate the identity of the author of the communication in question….

**Commonwealth v. Danzey**, 210 A.3d. 333, 338 (Pa. Super. 2019) (citations omitted), **appeal denied**, 219 A.3d 597 (Pa. 2019).

Here, S.L. testified that she recognized the username of the account that made the Snapchat posts as that used by T.W. **See** N.T., 7/17/20, at 42. Further, T.W.'s mother testified that Snapchat was the only social media account that T.W. had access to. **Id.** at 103. T.W.'s mother testified that she had also been sent the Snapchat posts; she periodically monitored T.W.'s Snapchat page; and T.W. had made the posts at issue. **Id.** at 104, 108-10. Officer Avdic also testified that he had spoken to the third party who provided

S.L. with the posts, and that the third party confirmed to Officer Avdic that she had knowledge that T.W. had made the posts. *Id.* at 84-85. Accordingly, we conclude that the juvenile court did not abuse its discretion in finding that the Snapchat posts were properly authenticated. *See Danzey*, *supra*. In light of the foregoing, because the Commonwealth presented sufficient evidence to adjudicate T.W. delinquent for retaliation, we can grant T.W. no relief on this claim.[6] *See D.J.B.*, *supra*.

Second, T.W. argues that her adjudication for retaliation at 093-2020 was against the weight of the evidence. Brief for Appellant at 24-25. T.W. claims that the weight of the evidence did not support her adjudication, as she never directly communicated with S.L.; the posts did not detail a specific threat; and there was no evidence that T.W. actually had authored the posts. *Id.* at 25.

When challenging the weight of evidence supporting an adjudication of delinquency, this Court employs a well-settled standard of review:

> [W]e may only reverse the [juvenile] court's [adjudication of delinquency] if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the [] court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the

---

[6] T.W. also asserts in her brief that she cannot be adjudicated under section 4953, because the statute prohibits retaliating against a "witness, victim or a party in a civil matter," and S.L. was a witness in a criminal matter. *See* Brief for Appellant at 16-17. We note that our Supreme Court recently ruled that the term "witness" in the retaliation statute applies to witnesses in criminal matters. *See Commonwealth v. Nevels*, 235 A.3d 1101, 1104-05 (Pa. 2020).

weight of the evidence. Rather, appellate review is limited to whether the [juvenile] court palpably abused its discretion in ruling on the weight claim.

Hence, a [juvenile] court's denial of a weight claim is the least assailable of its rulings. Conflicts in the evidence and contradictions in the testimony of any witnesses are for the fact finder to resolve….

*In the Interest of J.M.*, 89 A.3d 688, 692 (Pa. Super. 2014) (citation omitted).

The juvenile court, in denying T.W.'s weight claim, stated that it carefully considered the testimony and evidence presented at the hearing, and its adjudication was reached using the exercise of sound judgment, wisdom, and skill. *See* Juvenile Court Opinion, 11/2/20, at 7. Our review of the record confirms that the juvenile court did not abuse its discretion when it denied T.W.'s weight claim. As a result, we cannot grant T.W. relief on this claim. *See In the Interest of J.M.*, *supra*.

In T.W.'s third issue, she argues that the juvenile court improperly restricted T.W. from using social media except for educational or treatment purposes. Brief for Appellant at 26-33. T.W. asserts that such a prohibition was overly broad, unreasonable, and unlawfully curtailed her First Amendment right to freedom of speech. *Id.* at 27-30. T.W. describes the juvenile court's prohibition as a content-based restriction of her speech, and not narrowly tailored to her rehabilitative needs. *Id.* at 31-32. T.W. also argues that the social media prohibition was vague and ambiguous, as the juvenile court did

not specify what constitutes "social media," or an "educational purpose." *Id.* at 32-33.

"The Juvenile Act grants broad discretion to the court when determining an appropriate disposition. We will not disturb a disposition absent a manifest abuse of discretion." *In re J.G.*, 45 A.3d 1118, 1120 (Pa. Super. 2012) (citations and quotations omitted).

Section 6352 of the Juvenile Act, 42 Pa.C.S.A. §§ 6301-6365, provides, in relevant part, as follows:

**§ 6352. Disposition of delinquent child**

**(a) General rule.--**If the child is found to be a delinquent child the court may make any of the following orders of disposition determined to be consistent with the protection of the public interest and best suited to the child's treatment, supervision, rehabilitation, and welfare, which disposition shall, as appropriate to the individual circumstances of the child's case, provide balanced attention to the protection of the community, the imposition of accountability for offenses committed and the development of competencies to enable the child to become a responsible and productive member of the community:

* * *

(2) Placing the child on probation under the supervision of the probation officer of the court … under conditions and limitations the court prescribes.

42 Pa.C.S.A. § 6352(a)(2).

This Court has stated the following regarding a condition of probation:

A probation order is unique and individualized. It is constructed as an alternative to imprisonment and is designed to rehabilitate a criminal defendant while still preserving the rights of law-abiding citizens to be secure in their persons and property. When conditions are placed on probation orders they are formulated to insure or assist a defendant in leading a law-abiding life.

- 12 -

> Moreover, as long as conditions placed on probation are reasonable, it is within a trial court's discretion to order them.

***Commonwealth v. Houtz***, 982 A.2d 537, 539-40 (Pa. Super. 2009) (citations omitted).

In this case, the juvenile court provided the following explanation in support of its disposition:

> [T]he juvenile [c]ourt is tasked with finding [the] "least restrictive alternatives" in determining the appropriate disposition for juvenile offenders. With [T.W.], contacts with juvenile probation began in September of 2019 when she received a [C]onsent [D]ecree. ***See*** [N.T., 7/17/20,] at 7. [T.W.] received new charges, including aggravated assault with a deadly weapon, criminal conspiracy to commit aggravated assault with a deadly weapon, conspiracy to commit burglary, hindering apprehension or prosecution, amongst other charges and was adjudicated in December of 2019. ***Id.*** at 8. [T.W.] went sent [*sic*] to placement following the December adjudication and remained in placement until April of 2020. Twelve (12) days after being released from placement, the events leading to the present adjudication occurred.
>
> Addressing the concerns for delinquency while accessing [*sic*] the least restrictive alternatives, th[e juvenile c]ourt attempted to provide a disposition with specificity. Th[e juvenile c]ourt found that, based on the established facts in the adjudication [P]etition, [T.W.] should be restricted in her use of social media. "[T.W.], you are going to be restricted and prohibited from using social media. And we're going to put this prohibition in place until the next review hearing. However, with that being said, I recognize with the COVID epidemic that's going on there's going to be some requirement that you have to use electronics and perhaps (inaudible) purposes of school." [***Id.***] at 126. "The only exclusion and exception to the prohibition was for educational, therapeutic and other services.["] ***Id.***

Juvenile Court Opinion, 11/2/20, at 8-9.

We cannot conclude that the juvenile court's restriction from T.W. using social media outside of educational and therapeutic purposes violated T.W.'s First Amendment rights. The conduct resulting in T.W.'s adjudication and the revocation of her probation had a clear nexus to social media, as T.W. made the retaliatory posts using a social media application. Further, the juvenile court permitted T.W. to use social media and/or the Internet for educational or treatment purposes. *See* Order, 7/20/20, at 2. *Cf. Houtz*, 982 A.2d at 538 (wherein a complete ban on Internet and computer access as a condition of probation was overly broad, when there was no evidence that the offense at issue was facilitated by Internet or computer usage). Accordingly, the prohibition was not overly broad, and this claim fails. *See In re J.G.*, *supra*.

In her final issue, T.W. argues that the juvenile court erred in concluding that she had violated her probation at 253-2019 and 421-2019. Brief for Appellant at 34-37. T.W. asserts that no evidence existed to show that she had violated the terms of her probation barring her from contacting individuals involved in the criminal cases, as she had blocked S.L. from her Snapchat and S.L. could not see T.W.'s posts. *Id.* at 35. T.W. points out that she never directly communicated with anyone else named in the probation conditions. *Id.* at 35. T.W. asserts that if this Court were to find that the Commonwealth presented insufficient evidence to adjudicate her delinquent of retaliation, a violation of probation could not be established. *Id.* at 35-36. Further, T.W. claims that the juvenile court's statement, *i.e.*, that she had violated the

prohibition against "other juvenile activity," was too vague. *Id.* at 36. Alternatively, it was unclear that she failed to complete the general requirements and mandates of probation. *Id.*

"The Juvenile Act expressly provides that placement of a juvenile on probation subjects the juvenile to ongoing court supervision and conditions." *In Interest of M.M.*, 690 A.2d 175, 177 (Pa. 1997) (citing 42 Pa.C.S.A. § 6352(a)(2) (providing for placement of a delinquent child on probation under court supervision, subject to conditions)). The Juvenile Act grants broad discretion to the juvenile court in entering a dispositional order that finds a juvenile in violation of her probation, and this Court will not disturb such a disposition absent a manifest abuse of discretion. *See In re D.S.*, 37 A.3d 1202, 1203 (Pa. Super. 2011).

Here, we discern no abuse of discretion in the juvenile court finding that T.W. had violated her probation. As discussed above, there was sufficient evidence to support T.W.'s new adjudication of delinquency for retaliation against a witness. Having been found delinquent of the new offense, we agree with the juvenile court that probation was no longer effective, and revocation was warranted. Accordingly, T.W. is not entitled to relief on this claim. *See id.*

Dispositional Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  9/3/2021