J-S75029-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: A.B., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.B., A MINOR | No. 1093 EDA 2014 |

Appeal from the Dispositional Order entered March 7, 2014,
in the Court of Common Pleas of Philadelphia County,
Juvenile Division, at No(s): CP-51-JV-0004814-2012

| | |
|---|---|
| IN THE INTEREST OF: A.B., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.B., A MINOR | No. 1094 EDA 2014 |

Appeal from the Dispositional Order entered March 7, 2014,
in the Court of Common Pleas of Philadelphia County,
Juvenile Division, at No(s): CP-51-JV-0004815-2012

BEFORE: ALLEN, LAZARUS, and MUNDY, JJ.

MEMORANDUM BY ALLEN, J.:                **FILED DECEMBER 23, 2014**

A.B. ("Appellant") appeals from the juvenile court's dispositional order revoking his probation and committing him to the state's most secure placement for up to four (4) years. For the following reasons, we vacate the dispositional order and remand to the juvenile court.

We initially note that Appellant presents three issues for our review:

1.    Did the Juvenile Court abuse its discretion in an unreasonable manner by revoking [Appellant's] probation and sentencing him to a period of up to four (4) years in a State juvenile facility (Danville) without considering a less restrictive alternative such as GPS (electronic monitoring) together with geographical restrictions, which [Appellant's] Probation Officer recommended as he was less than three months from graduating from high school with honors?

2.    Did the Juvenile Court err in not allowing [Appellant's] probation officer to publish a full report and recommendation on the record which, although not binding on the Court, it should be dutifully reviewed before determining a sentence?

3.    Did the Juvenile Court err in removing [Appellant's] revocation of probation hearing from the Juvenile Court judge who had supervised his probation for approximately 11 months prior to issuing a bench warrant for [Appellant's] failure to appear for his review hearing?

Appellant's Brief at 5.

We find merit to Appellant's first issue.  Because of our resolution of this first issue, we need not and do not address Appellant's second and third issues.

Our analysis compels a detailed recitation of the facts contained in the certified record as follows:

On April 12, 2013, in two consolidated cases, the juvenile court adjudicated Appellant delinquent on charges of burglary and conspiracy, and receiving stolen property and conspiracy.  The juvenile court entered a dispositional order on that date, placing Appellant on probation, which was conditioned on the following:  1) Appellant attend school without unexcused

lateness or absences from school or individual classrooms; 2) Appellant undergo random drug screenings, and 3) Appellant honor an eight o'clock curfew unless otherwise in the company of his mother.

Appellant remained on probation until approximately ten months later, when, on February 5, 2014, Appellant failed to appear for a review hearing, and Judge Lori A. Dumas issued a bench warrant for Appellant pursuant to Pa.R.J.C.P. 140(A). Appellant appeared, and the following day the Master issued a recommendation dated February 6, 2014, which specified that Appellant's next review hearing was "to be heard by Judge Kevin M. Dougherty." The recommendation was adopted as an order by Judge Dougherty on February 6, 2014. Appellant's counsel failed to appear at the next review hearing scheduled for February 26, 2014, and the matter was continued to February 28, 2014. On February 28, 2014, Appellant's counsel again failed to appear and Judge Dougherty removed him from the case "due to counsel's consistent failure to appear to represent on this matter." Review Order, 2/28/14. Judge Dougherty appointed new counsel for Appellant and scheduled a review hearing for March 7, 2014, "to be heard by Judge Kevin M. Dougherty ONLY." *Id*.

At the commencement of the March 7, 2014 hearing, Judge Dougherty stated, "I am Judge Dougherty, coming down for this particular case as a

result of its designation as a focused deterrence issue."[1]  N.T., 3/7/14, at 2.

Appellant's probation officer, the Commonwealth, and Appellant's counsel

then commented:

> **PROBATION OFFICER**:      Since I received this case, I never
> really had any problems with [Appellant].  His drug screens were
> all negative, up until recently.  He was attending school, he was
> receiving good grades.
>
>        Everything just started to turn recently.  He tested positive
> for marijuana on January 6th, however, two times after that, he
> tested negative for all substances after that.  He is still attending
> school.  He had unexcused absences.  He had been truant,
> however, his grades are still A's and B's.
>
> **COMMONWEALTH**:    I can fill in from here.  In addition, he
> does have truant issues from school, although he is getting A's,
> B's, I am sure that he is actually being deemed gifted by the
> School District, so he is actually a very, very intelligent young
> man.  But he is cutting school, he tested positive for marijuana.
> He had a summary arrest for jumping a turnstile on the Broad
> Street line.  And, he had curfew issues in terms of coming in.
>
>        The Grandfather, when he went to live with [his]
> Grandfather, [who] lives in Drexel Hill, outside of the city.  But
> he reported that there were curfew issues where [Appellant]
> wasn't coming home.  So, although they are not – I don't want

_____

[1] Judge Dougherty explained:    "Focused deterrence is an initiative
designated for South Philadelphia in which the District Attorney's Office, and
the Police Department with the Gang Task Force, has brought in all the
heads of the various gangs that are warring in South Philadelphia, in
particular.  And they sat down and they said to them, non-descriptively, stop
the offense, we know who you are – the forewarned, the old saying to be
forewarned is to be forearmed – law enforcement said, We know who you
are, who your members are, what the war is over.  It is modeled after New
York and Boston, I believe."  N.T., 3/7/14, at 15.  Judge Dougherty further
stated:  "I said I would listen to these cases so that their Constitutional
rights are protected, [Appellant], but I also want to make sure everybody is
well aware of what is going on."  **Id**. at 17.

to say minor violations, when you combine all of them together, [Appellant] is not compliant with his Probation. So, I was seeking the violation hearing based on that and based on the fact that [Appellant] is a known gang member in the 27th Street Gang. And that is why based on combining those, the violation, with his known gang association, I was asking you to place [Appellant], because this gang has been involved in violent activity recently.

**DEFENSE COUNSEL**: Your Honor, regarding this gang, we don't believe there is any evidence [of Appellant] in association with versus [sic] actual gang membership. If there was any gang membership, it has stopped.

[Appellant's] mother [is incarcerated] and he lived with relatives. He didn't go to live with his Grandfather until December. His Grandfather makes him go to church. He has a curfew. Your Honor, I am asking that you not violate, that you take the recommendation of the Probation Officer.

***

Your Honor, he has a (inaudible) partial scholarship to Virginia University[2]. He has not been able to do his senior project because he has been held for the last four weeks. His Grandfather paid $400 of the restitution today and that leaves a balance of $197. He worked about four weeks last summer and he used that to pay his expenses, and unfortunately, did not (technical difficulties making audio recording totally inaudible).

N.T., 3/7/14, at 3-6.

The probation officer testified that his "recommendation [for Appellant was] GPS." *Id*. at 5. The Commonwealth asked the juvenile court "to place" Appellant. *Id*. at 4. Appellant's counsel requested that the juvenile

---

[2] We take judicial notice that although there is the University of Virginia, Virginia State University, and West Virginia University, there is no "Virginia University", such that it is unclear from Defense Counsel's reference which school offered Appellant a partial scholarship.

court "not violate [Appellant], [and] take the recommendation of the Probation Officer." *Id*. at 5.

Appellant testified that he was seventeen (17) years old. *Id*. at 6. He stated that he had "never" been a part of a gang. *Id*. at 7.

Philadelphia Police Officer Matthew York testified next. None of Officer York's testimony concerned Appellant's school attendance, drug screenings or curfew conditions of probation. Rather, Officer York testified to being assigned to the South Gang Task Force and having the "most up-to-date current information on who is involved and in what gang and where they operate and what they do." *Id*. at 7-8. Officer York identified Appellant as "absolutely" a part of the 27th Street gang, and explained that the 27th Street gang had several factions, including the "Jungle Boys". *Id*. at 8. Officer York testified:

> [Appellant] is self identified on social media as a Jungle Boy. Very active in discussing that. I have several personal observations of him hanging out, being with the gang members. I was present when he recently filmed a rap video, which I observed on UTube [sic], Your Honor, in which he quote Ride through my block, and you will get blipped, and it shows signs of 27th and Tasker.
>
> I observed him in South Philadelphia, very recently up until his arrest, almost every day, hanging out with the gang members, affiliating with them.

*Id*. at 8-9. Officer York testified that the Jungle Boys are a "very violent" gang, involved with "homicides, shootings". *Id*. at 10.

Appellant's grandfather testified that he "had a lot of respect" for Officer York and that he had "seven family members on the Police Force." *Id*. at 11. In response to the juvenile court's questioning, Appellant's grandfather testified that he did not know his grandson to be associated with gang members:

> **GRANDFATHER**: I have never known – because he knew I would be the first one --.
>
> **THE COURT**: I am just asking. So he never brought these people. I am not asking if you know. I am asking the names of these boys, have you ever met them?
>
> **GRANDFATHER**: No.

*Id*. at 11.

Next, Appellant's counsel began her cross-examination of Officer York, which devolved into discourse between the officer and the juvenile court:

> **DEFENSE COUNSEL**: Officer, you said that you observed a video of my client?
>
> **OFFICER YORK**: Yes.
>
> **DEFENSE COUNSEL**: But he wasn't arrested based on that video was he?
>
> **OFFICER YORK**: He was.
>
> **DEFENSE COUNSEL**: When was he arrested?
>
> **OFFICER YORK**: It was the RSP charge.
>
> **COMMONWEALTH**: The other case before Your Honor.
>
> **OFFICER YORK**: If I may explain. I responded to that location. A female complainant told me – stated that there was some merchandise that was being sold in a store that she

- 7 -

recognized that was taken in a burglary that day, Your Honor. I went back and reviewed the '48 paperwork for that burglary. It was identified that there was a witness who never showed up in court who observed a young black male with long braids (inaudible), several items.

That night, a half block away, I observed [Appellant] with Zamir Wallpower and I met the co-Defendant, who was also identified as a 27th Street member, attempting to sell that same Android Tablet to the store. The female confronted it [sic], took it and they fled the location. I made the identification of him because of my knowledge of him –

**THE COURT**: He tried to sell it back to the owner?

**OFFICER YORK**: He tried to sell it to the store, and she just happened to be in there. I made the –

**THE COURT**: I am confused. The owner whose house was burglarized was in the store when he came in –

**OFFICER YORK**: Well, actually, it was the neighbor and they were talking, and she said, Oh, my God. It was right before Christmas, all my stuff got burglarized and this is what was taken. She happened to be in the store at the same time he was trying to sell that merchandise. She took it from him and they fled the location.

**THE COURT**: Got it.

**OFFICER YORK**: I watched the video, and made the identification and worked with South Detectives to get an arrest warrant. As that arrest warrant was prepared, he committed ths [sic] second burglary, in which he was in somebody's house – I don't know if she was at home or had walked in on it, but they fled the location, were apprehended and positively identified.

**THE COURT**: Knowing all that happened, why would you miss school, why would you get hight [sic], why would you violate any of the minor conditions of probation?

**APPELLANT**: First thing, the store thing, I don't [sic] have nothing to do with that.

**THE COURT**: You have already been convicted of it. That is over and done with. ***And that fact that you keep lying to me, after somebody heard your story, and convicted you,***

- 8 -

> *only proves to me that I have to keep you locked up for a long time*.
>
> Here's the deal, I have been trying to be nothing but honest and straight with you, and I have given you every opportunity. You have done nothing but lie to me. ***And I just opened the door and you had to say that you weren't there, after you just heard that you were convicted of it and that is what you are in front of me for***. Not a problem. I've heard enough.
>
> Commit to the State for secure placement. You are going to learn. You are a very intelligent guy but it is not going to be used for corruption, crime or injury. You had the opportunity to walk the straight and narrow. The first person you bumped into was me. And now, I am taking you off the streets and ***I am placing you in the most secure facility I have for juveniles***.

N.T., 3/7/14, at 17-20 (emphasis added).

In considering the record before us, we are mindful that the Juvenile Act grants broad discretion to the juvenile court in disposition. ***In the Interest of D.S.***, 37 A.3d 1202, 1203 (Pa. Super. 2011) (citations omitted). This Court will not disturb a disposition absent a manifest abuse of discretion. ***Id***. An abuse of discretion is not merely an error of judgment but involves the misapplication or overriding of the law or the exercise of a manifestly unreasonable judgment based upon partiality, prejudice or ill-will. ***Commonwealth v. Brown***, 26 A.3d 485, 493 (Pa. Super. 2011) (citations omitted).

Upon review, we are constrained to conclude that the juvenile court exhibited unreasonable judgment and abused its discretion in committing Appellant to secure placement for up to four (4) years, where such

disposition was contrary to the dictates of the Juvenile Act, and the juvenile court based Appellant's placement on Appellant's alleged gang involvement, and Appellant's failure to admit guilt to crimes for which he had already been adjudicated.

The purpose of the Juvenile Act is:

Consistent with the protection of the public interest, to provide for children committing delinquent acts programs of supervision, care and rehabilitation which provide balanced attention to the protection of the community, the imposition of accountability for offenses committed and the development of competencies to enable children to become responsible and productive members of the community.

42 Pa.C.S.A. § 6301(b)(2).

In rendering its disposition, the juvenile court shall:

state its disposition and the reasons for its disposition on the record in open court, together with the goals, terms and conditions of that disposition. If the child is to be committed to out-of-home placement, the court shall also state the name of the specific facility or type of facility to which the child will be committed and its findings and conclusions of law that formed the basis of its decision consistent with subsection (a) and section 6301, **_including the reasons why commitment to that facility or type of facility was determined to be the least restrictive placement that is consistent with the protection of the public and best suited to the child's treatment, supervision, rehabilitation and welfare_**.

42 Pa.C.S.A. § 6352(c) (emphasis added).

The record before us, a majority of which is recited **_supra_**, contains uncontroverted evidence that at the time of the hearing, Appellant was before the juvenile court for relatively minor infractions related to his

probation, which consisted of a single positive drug test for marijuana (with Appellant's other drug tests being negative), jumping a subway turnstile, and truancy and curfew issues. As counsel for the Commonwealth stated, "although they are not – I don't want to say minor violations, when you combine all of them together, [Appellant] is not compliant with his Probation." N.T., 3/7/14, at 4. The juvenile court as well, in its query to Appellant, asked "why would you violate any of the minor conditions of probation?" *Id*. at 19.

It is undisputed that at the time of the hearing, Appellant was a "highly intelligent" and "gifted" young man who was earning good grades and was about to graduate from high school and attend college; in fact, Appellant had received a partial college scholarship. *Id*. at 3-6. Also, Appellant had moved out of the City of Philadelphia. *Id*. Nonetheless, in committing him to secure placement for up to four (4) years, the juvenile court focused not on Appellant's probation violations, but on Officer York's testimony concerning Appellant's gang affiliation in the City of Philadelphia, as well as Appellant's past crimes, for which he previously had been adjudicated, approximately one year prior, on April 12, 2013. Although gang affiliation is disreputable, it is not a crime. Moreover, the juvenile court improperly focused on Appellant's past adjudications in rendering its disposition:

> **APPELLANT**: First thing, the store thing, I [didn't] have nothing to do with that.

**THE COURT**:     You have already been convicted of it.  That is over and done with.  ***And that fact that you keep lying to me, after somebody heard your story, and convicted you, only proves to me that I have to keep you locked up for a long time***.

Here's the deal, I have been trying to be nothing but honest and straight with you, and I have given you every opportunity.  You have done nothing but lie to me.  ***And I just opened the door and you had to say that you weren't there, after you just heard that you were convicted of it and that is what you are in front of me for***.  Not a problem.  I've heard enough.

Commit to the State for secure placement.  You are going to learn.  You are a very intelligent guy but it is not going to be used for corruption, crime or injury.  You had the opportunity to walk the straight and narrow.  The first person you bumped into was me.  And now, I am taking you off the streets and ***I am placing you in the most secure facility I have for juveniles***.

N.T., 3/7/14, at 19-20 (emphasis added).

We have held that a court may not require a juvenile to admit guilt to demonstrate that he is amenable to treatment in the juvenile system. ***Commonwealth v. Brown***, 26 A.3d 485 (Pa. Super. 2011).  Although the factual scenario in ***Brown***[3] is different from this case, we find the rationale applicable here, where the record clearly indicates that the juvenile court, in rendering its disposition, compelled Appellant to admit guilt to prior crimes for which he had been adjudicated a year earlier.  ***See*** N.T., 3/7/14, at 20

---

[3] ***Brown*** concerned a juvenile's invocation of the Fifth Amendment privilege against self-incrimination relative to a homicide charge and de-certification proceedings.

("That is over and done with. And the fact that you keep lying to me … only proves that I have to keep you locked up for a very long time.").

Given the foregoing, we conclude that it was manifestly unreasonable and an abuse of discretion for the juvenile court to commit Appellant to the state's most secure placement for up to four (4) years. Although the juvenile court is not bound by the recommendations of the probation officer and certainly not counsel, the juvenile court **is** bound by the dictates of the Juvenile Act. Appellant was not living in Philadelphia at the time of the hearing, and GPS monitoring as recommended by the probation officer and Appellant's counsel would have restricted Appellant's freedom of movement and travel to Philadelphia. The juvenile court had available various options for Appellant's disposition. In recognizing Appellant's potential, the juvenile court said:

> It is not as if you don't have a good brain in your head. You are a smart man, you are deemed gifted and you have opportunities to make it in this world. Your job is to do right things, get an education, get a job, buy a house and bring both [your grandfather and sister] in there. That is what men do.

*Id*. at 21-22.

The juvenile court also stated:

I had every intention to step him down to GPS. All I needed was for him to confirm to me that he made a mistake, but you all heard him, he didn't do it.

*Id*. at 23.

- 13 -

The above comments indicate that the juvenile court rendered its dispositional order in contravention of both the Juvenile Act and **Brown, supra**. The juvenile court concluded, "I am placing you in the most secure facility I have for juveniles." **Id**. at 20. That commitment is not supported by the facts and record in this case or the law of our Commonwealth. Appellant is an intelligent young man with strong academic potential and at the time of the March 7, 2014 hearing, had committed only minor probation violations. Although he may have been affiliated with a gang, there was no evidence of criminal involvement. The Juvenile Act provides for commitment that is "determined to be the least restrictive placement that is consistent with the protection of the public and best suited to the child's treatment, supervision, rehabilitation and welfare." 42 Pa.C.S.A. § 6352(c). Here, the juvenile court's commitment of Appellant to secure placement of up to four (4) years was not "the least restrictive" nor "consistent with the protection of the public and best suited to [Appellant's] treatment, supervision, rehabilitation and welfare." **Id**.

For the above reasons, we vacate the juvenile court's dispositional order and remand for another dispositional hearing before a judge other than Judge Dougherty, consistent with this memorandum, case law and the dictates of the Juvenile Act. **In the Interest of M.M.**, 855 A.2d 112, 116 (Pa. Super. 2004) (*citing* **Koleski v. Park**, 525 A.2d 405, 410 (Pa. Super. 1987) (remanding juvenile case to a different judge based on judge's "demonstrated prejudgment" and stating, "Assignment to a different judge

- 14 -

on remand is appropriate 'when the judge's actions below demonstrated a degree of bias, capricious disbelief, or prejudgment such as to raise doubts as to his or her ability to preside objectively and fairly upon remand.'").

Order vacated.  Case remanded.  Jurisdiction relinquished.

Judge Mundy joins this memorandum.

Judge Lazarus files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/23/2014