646 A.2d 1233

### In re Anderson LOVE.

### Appeal of Anderson LOVE.

Superior Court of Pennsylvania.

Submitted July 11, 1994.

Filed Aug. 26, 1994.

556

558

---

Raymond D. Roberts, Norristown, for appellant.

Patricia E. Coonahan, Asst. Dist. Atty., Norristown, for Com., participating party.

Before OLSZEWSKI, TAMILIA and HOFFMAN, JJ.

TAMILIA, Judge:

Anderson Love, a juvenile, appeals from the Order of Disposition entered December 29, 1993 following an adjudication of delinquency after appellant was found guilty of rape, criminal attempt, indecent sexual intercourse, criminal coercion, indecent assault and indecent exposure. Following disposition hearings of December 27, 1993 and December 29, 1993, appellant was committed to the Youth Development Center in Bensalem for an indeterminate period of time.[1]

On August 23, 1993, at approximately 4:30 a.m., Anderson Love forced entry into a single family residence in the Roslyn section of Abington Township. Appellant awoke the victim, a 33–year old single female who was the only occupant, and repeatedly raped her at knife-point for approximately one hour. Shortly after the incident, the victim was taken to police headquarters, where a graphic artist officer made a composite sketch from her description of the assailant, which was subsequently disseminated to area law enforcement. Several days later, the police detained appellant pursuant to the composite sketch and photographed him for identification purposes. The victim was shown two photo arrays, one on August 24, 1993, which did not contain a photograph of appellant and one on August 26, 1993, which did contain appellant's photograph. The victim positively identified appellant in the second array.

---

1. **§ 6353. Limitation on and change in place of commitment**
 **(a) General rule.**—No child shall initially be committed to an institution for a period longer than four years or a period longer than he could have been sentenced by the court if he had been convicted of the same offense as an adult, whichever is less. The initial commitment may be extended for a similar period of time, or modified, if the court finds after hearing that the extension or modification will effectuate the original purpose for which the order was entered. The child shall have notice of the extension or modification hearing and shall be given an opportunity to be heard. The committing court shall review each commitment every six months and shall hold a disposition review hearing at least every nine months.
 At any rate, the juvenile may not be institutionalized beyond his twenty-first birthday.

■ On appeal, appellant first argues the hearing judge[2] erred by not suppressing the out-of-court photograph array identification of appellant as it was unduly suggestive. Detective Webb completed the array of eight photographs of young African American males based on a picture he took of appellant when he was arrested. Appellant contends his picture is the only one that fits the victim's actual description. She described her assailant as a black male, medium complexion, young, real short hair and no facial, chest or back hair. However, at least four of the photographs were of young males with high African box cuts, at least two of the males in the photo array had beards and facial hair and two males had dark complexions and some had fair complexions. Moreover, the detective told the victim there was a suspect in custody and she did not immediately select appellant from the array but only did so after a period of time of being allegedly "prodded" by the detective. Appellant contends this entire procedure was a denial of due process due to the unnecessary suggestive confrontation procedure which resulted in both unreliable out-of-court and in-court identifications.

In *In the Interest of McElrath v. Commonwealth*, 405 Pa.Super. 431, 592 A.2d 740 (1991), this Court set forth the standard to review the denial of a motion to suppress evidence.

In reviewing the denial of a motion to suppress evidence, an appellate court has a duty to determine whether the record supports the factual findings of the court below and the legitimacy of the inferences and legal conclusions drawn from those findings. In making this determination, an appellate court considers only the evidence of the prosecution's witnesses and so much of the evidence for the defense which remains uncontradicted when fairly read in the context of the record as a whole. When the evidence viewed in this manner supports the factual finding of the suppression

---

**2.** Throughout this Opinion, we refer to the "hearing judge" instead of the "trial judge" as pursuant to the Juvenile Act, a proceeding in Juvenile Court is a hearing and not a trial. *See* 42 Pa.C.S. § 6335.

court, we will reverse only if there is an error in the legal conclusion drawn from those factual findings.

*Id.* at 436–37, 592 A.2d at 742 (citations omitted).

The hearing judge, after reviewing the evidence and testimony, made the following factual findings as to the photo array:

As far as the photo array, I have examined the photo array, the photo composite. I think it's a good composite. I think they're all taken—all black males, approximately the same age. There are no distinguishing features concerning the clothes. Not all of their hair is the same length, I agree. Some hair is shorter than others, and not all of the complexions are identical. But as I look at, certainly, two, three and four, and eight, the complexions are about the same in there. But when I look at all those pictures in relation to the subject, who is number 4, I think it's a good photo array, and it's not at all suggestive.

They were all taken with a Polaroid camera, all with the same kinds of background, all black males, approximately the same age, all relatively short hair, although some hair is longer than others. I agree. And most of the ones in the exhibit I am looking at, there is no facial hair. There may be in seven, and there may be in one, I'm not even sure. But when you look at the facial features, it's a good composite. And nothing is to say that a person who who [sic] may not have had facial hair on the evening in question may have had facial hair when the the [sic] picture was taken. I think the important thing to consider is not how much all the pictures resemble a description given by an alleged victim, but whether there is anything in the composite to distinguish the person who is identified, or suggest the person was identified, as opposed to the other seven pictures in the composite. And there is nothing at all unduly suggestive in this composite, as far as I'm concerned.

(N.T., Vol. I, 11/30/93, pp. 66–67.) The hearing judge took into account the various distinguishable characteristics of the individuals photographed. However, he also considered they were all taken with a Polaroid camera, all with the same

background, all black males, all had relatively short hair and all approximately the same age. Accordingly, with respect to the selection of photographs, we find the court's finding it was not unduly suggestive is clearly supported by the evidence. *Commonwealth v. Nelson*, 399 Pa.Super. 618, 582 A.2d 1115 (1990) (Photo array to robbery victim not unduly suggestive where there were at least eight black males, similar in age, skin complexion, hair and general appearance and no identification marks on photos); *Commonwealth v. Blassingale*, 398 Pa.Super. 379, 581 A.2d 183 (1990) (Photo array not unduly suggestive where photos were of eight black males, ages 18 to 30, and in addition to appellant only two others had unusual eye characteristics).

Contrary to appellant's contention, there was no evidence of "goading" on the part of Detective Webb (*see* N.T., p. 68). Moreover, there is no merit to the argument the identification process was unduly suggestive because the photos did not match the victim's description of her assailant. *See Commonwealth v. Kyle*, 367 Pa.Super. 484, 533 A.2d 120 (1987). We also find no merit to appellant's contention this out-of-court identification so tainted the in-court identification that it should be treated as worthless. *See Commonwealth v. Baker*, 531 Pa. 541, 614 A.2d 663 (1992).

 Appellant next argues the out-of-court photo array identification should have been suppressed since he did not have counsel present during the post-arrest photo array. Appellant contends Pennsylvania law requires a right to counsel at a post-arrest photo display. This Court and the Commonwealth do not contest the right to counsel attaches at the time of arrest. However, appellant has provided no evidence in his brief that he had been arrested prior to the photo identification process. The court properly found appellant was not in custody at the time of the photo array. Detective Webb testified appellant was only being "interviewed" as a "possible suspect" and voluntarily came to the police station at which point his father was notified and came in as well. An arrest occurs with any act that indicates an intention to take the person into custody and to subject him to actual control

and will of the person making the arrest. *Commonwealth v. Miller*, 426 Pa.Super. 410, 627 A.2d 741 (1993). Presently, there is no evidence appellant was placed under arrest. In fact, there are no indicia which would lead a reasonable person to believe appellant had been arrested at the time of the photo array. *Id.* (Test of when a person is arrested requires an objective view). Therefore, we find the hearing judge correctly determined appellant had no right to counsel during the photo array identification as it occurred prior to his arrest. *See Commonwealth v. Whiting*, 439 Pa. 205, 266 A.2d 738 (1970).

■ Thirdly, appellant contends the court erred in not suppressing statements he made without the advice of counsel or an interested adult being present. It was the testimony of Officers O'Conner and Dalton they went to the residence of Pat Sands, who is a neighbor of the victim and a friend of appellant's with whom he was visiting, at 1:00 a.m. on August 26, 1993. Appellant contends the officers questioned him and elicited certain statements pertaining to the rape. In fact, appellant, relying on the testimony of Pat Sands, contends Officer Dalton shined a flashlight in his face and stated, "You did it, didn't you?" All of this, appellant argues, was performed without advising appellant of his right to counsel or right to consult with an interested adult.

■ In a juvenile proceeding, the hearing judge sits as the finder-of-fact. In a case such as this, where the credibility of witnesses is at issue, the weight to be assigned the testimony of the witnesses is within the exclusive province of the factfinder. *Smith v. Shaffer*, 511 Pa. 421, 515 A.2d 527 (1986). The hearing judge, as sole assessor of credibility, may believe all, part or none of the evidence presented. *Commonwealth v. Blystone*, 421 Pa.Super. 167, 617 A.2d 778 (1992). The hearing judge's findings will not be reversed by this Court unless it appears that he has clearly abused his discretion or committed an error of law. *Weir by Gasper v. Estate of Ciao*, 521 Pa. 491, 556 A.2d 819 (1989).

■ The hearing judge, after reviewing the evidence, chose to believe the testimonies of Officers O'Conner and Dalton (N.T., pp. 64–66). The evidence reveals Pat Sands, with appellant present, invited the officers into his house. The conversation was friendly and did not involve any questioning relating to the rape. Appellant was free to move about the house and was at no time placed under arrest or questioned in any way. The officers simply showed the boys the sketch and discussed general neighborhood happenings.[3] The officers left the house informing appellant he may be contacted by detectives the next day. Since appellant did not undergo any "custodial interrogation" we find the officers did not err in failing to give a *Miranda*[4] warning. *Commonwealth v. Fento,* 363 Pa.Super. 488, 526 A.2d 784 (1987). Accordingly, the hearing judge did not err in failing to suppress any statements made by appellant. Regardless, this argument is without merit as any statements made to the officers were immaterial to appellant's conviction. The court's conclusions were based on the victim's testimony and positive identification of appellant, the strong FBI corroboration testimony and the "unimpressive" alibi defense (N.T., pp. 155–159). Thus, any error in admitting appellant's statements to the police is harmless beyond a reasonable doubt. *See Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155 (1978).

■ Finally, appellant contends the court erred by ordering an unduly harsh period of commitment and by not affording him the opportunity to examine certain witnesses concerning the disposition recommendations made by those witnesses.

■ The Juvenile Act is clear that a delinquent's disposition is a duty vested in the discretion of the adjudicating juvenile court. 42 Pa.C.S. § 6352. This Court will not disturb a sentence absent a manifest abuse of discretion. *Commonwealth v. Hall,* 382 Pa.Super. 6, 554 A.2d 919 (1989). Beyond a bald assertion in his argument caption, appellant failed to

3. Since appellant does not specify which statements should have been suppressed, this Court cannot address them in any specific detail.

4. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

advance any argument to support his contention the disposition was unduly harsh for such a crime. As such, we find no merit to his allegation. *Id.*[5]

This Court also finds no merit to appellant's alleged error relating to the dispositive process, which was within the Juvenile Court's broad discretion. 42 Pa.C.S. §§ 6301(b)(2) and 6352(a)(3). At the hearing, the court considered the reports of the probation officer, the Youth Center and the psychological and psychiatric evaluations which satisfies the due process requirements of 42 Pa.C.S. § 6301(b)(4). Moreover, the court specifically provided appellant an opportunity to present testimony at a later time if he disagreed with the placement facility selected. Accordingly, appellant was afforded a proper dispositional hearing and his commitment was not unduly harsh.

Disposition affirmed.

**5.** As detailed in footnote one, *supra,* the discretion of the Juvenile Court in implementing a disposition is broad, it is flexible and the Juvenile Court has considerable power to review and modify the commitment, taking into account the rehabilitative progress or lack of it of the juvenile. Without extreme specificity as to the error by the court in imposing the commitment, there can be no basis for setting aside the disposition. In any event, the Juvenile Court, by operation of law, loses jurisdiction of the juvenile at his twenty-first birthday.