J-S38013-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

IN THE INTEREST OF: R.G. : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
APPEAL OF: R.G. :
:
:
:
:
:
: No. 1050 WDA 2017

Appeal from the Order Entered June 27, 2017
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-JV-1945-2016

BEFORE: BOWES, J., NICHOLS, J., and STRASSBURGER*, J.

MEMORANDUM BY BOWES, J.: FILED JUNE 11, 2019

R.G. appeals the June 27, 2017 dispositional order placing him in a residential education facility after he was adjudicated delinquent for acts that would constitute robbery and simple assault if committed by an adult. We affirm.

This appeal returns to us following our January 2, 2019 remand to the juvenile court for the preparation of an amended Rule 1925(a) opinion. The court complied with our directive, and the matter is now ready for our merits review.

We previously summarized the relevant facts and procedural history as follows:

On May 18, 2017, R.G. was adjudicated delinquent for the commission of robbery and simple assault. The adjudication stems from R.G.'s attempt to steal a purse, cellular telephone, and shopping bags from Mara Pasko while she was trying to enter her car on June 11, 2016. During the assault, R.G. punched the victim

_____
* Retired Senior Judge assigned to the Superior Court.

> in the face, causing her to fall to the ground. She suffered a black eye and abrasions on her hip, legs, and knees.

In the Interest of R.G., 2019 WL 1590686, 1050 WDA 2017 (Pa.Super. 2019) (unpublished memorandum at 1).

The initial adjudication proceeding resulted in a mistrial. Appellant was subsequently retried before a different judge and adjudicated delinquent for committing the above-referenced offenses. As it relates to this appeal, we observe that during the first adjudication proceeding, the Commonwealth presented the testimony of Pittsburgh Police Officer Kalieb Hines, one of the officers who responded to the robbery and physical assault of Ms. Pasko.[1] Officer Hines testified that he assisted Police Officer Zachary Vozza, who was the primary unit in the investigation. After arriving at the scene, Officer Hines observed Appellant and chased him to a nearby residence. Significantly, Appellant fit the assailant's precise physical description and he was wearing clothing similar to what Officer Vozza described over the police radio. Several minutes later, Officer Hines observed Appellant emerge from the residence wearing partially different clothing. However, as an aficionado of athletic shoes, Officer Hines recognized that Appellant was wearing the identical pair of rare gold-accented shoes that the suspect wore when he ran into the home. Officer Hines apprehended Appellant and detained him for a show-up, in-

_____

[1] While the certified record identified Officer Hines as both Kalieb and Caleb, the officer's testimony confirmed that the name is Kalieb. See N.T., 3/21/17, at 74.

- 2 -

person identification by the victim, who recognized Appellant as her assailant. As Officer Hines was not the arresting officer, he did not transport Appellant to the police station or prepare the arrest report.

During cross-examination, Officer Hines testified, inter alia, that he prepared a supplemental police report but neglected to provide it to the Commonwealth or bring it to the hearing. N.T., 3/21/17, at 94. After attempting to locate the supplemental report during a recess, Officer Hines testified that he was unable to locate the report, and he believed it was misfiled under an incorrect identification number. Id. at 101. Therefore, it would be impossible to locate. Id. Following argument, the juvenile court granted Appellant's motion for a mistrial based upon the Commonwealth's failure to disclose the supplemental police report. Id. at 117.

The matter was reassigned to a different juvenile court judge for the second adjudication hearing. Ms. Pasko testified and, over Appellant's hearsay objection, the Commonwealth introduced an audio recording of Ms. Pasko's telephone call to 911 and played it for the court.[2] N.T., 5/18/17, at 14-15, 98. As it relates to our discussion herein, the Commonwealth proffered the recording under Pa.R.E 803(1) and (2), exceptions to the hearsay rule that

_____

[2] The substance of the telephone call was not included in the notes of testimony from the May 2017, hearing. However, portions of the exchange were transcribed during the prior adjudication hearing, when Appellant played excerpts in an attempt to impeach Ms. Pasko's testimony.

permit the introduction of a present sense impression and excited utterance, respectively.[3] The juvenile court did not immediately specify which exception it relied upon in overruling Appellant's objection. Id. at 15.

Officer Hines testified consistently with his prior testimony except that, when confronted on cross-examination about the purported supplemental police report, the officer stated that his initial belief that he prepared a supplemental statement was inaccurate. He explained, "I didn't write one. I was mistaken. I thought I had written one." Id. at 92. Officer Hines confirmed that he was testifying from memory, having refreshed it in anticipation of the hearing by reviewing the arrest report that Officer Vozza

_____

[3] Rule 803 provides in pertinent part as follows:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> (1) Present Sense Impression. A statement describing or explaining an event or condition, made while or immediately after the declarant perceived it. When the declarant is unidentified, the proponent shall show by independent corroborating evidence that the declarant actually perceived the event or condition.
>
> (2) Excited Utterance. A statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused. When the declarant is unidentified, the proponent shall show by independent corroborating evidence that the declarant actually perceived the startling event or condition.

Pa.R.E. 803(1) and (2).

drafted on the night of the robbery. Id. at 93-94. At the close of the proceeding, the juvenile court adjudicated R.G. delinquent of robbery and simple assault.

On June 27, 2017, the juvenile court entered a dispositional order placing R.G. in the Glen Mills School, a secure residential education facility. This timely appeal followed, wherein R.G. presents three issues:

> I. Whether the [juvenile] court violated R.G.'s constitutional confrontation right under the Sixth Amendment of the United States Constitution and Article I, § 9 of the Pennsylvania Constitution and/or R.G.'s right to a fair trial under the Due Process Clauses of the United States and Pennsylvania Constitutions when it allowed Officer Kalieb Hines to testify despite his sworn testimony that the sole police report he authored in this matter, the only one in which his version of events appeared, was unable to be located, thereby foreclosing the possibility of any pretrial investigation and meaningful cross-examination of him by counsel at trial.
>
> II. Whether the [juvenile] court violated R.G.'s right to a fair trial under the Due Process Clause of the United States and Pennsylvania Constitutions when it allowed the 911 call of the complainant to be played, pursuant to Pennsylvania Rule of Evidence 803(1), as a present sense impression after the Commonwealth failed to lay a sufficient foundation for its admission.
>
> III. Whether the Commonwealth made an impermissible burden – shifting argument in its closing when it commented on defenses [sic] counsel's failure to elicit evidence on cross-examination.

Appellant's brief at 7-8.

We review the juvenile court's disposition order for an abuse of discretion. In re Love, 646 A.2d 1233, 1238 (Pa.Super. 1994). "The Juvenile Act is clear that a delinquent's disposition is a duty vested in the discretion of

the adjudicating juvenile court. This Court will not disturb a sentence absent a manifest abuse of discretion." Id. (citations omitted).

Appellant's first contention is that the juvenile court erred in declining to prohibit the testimony of Officer Hines. Appellant's precise position is a moving target insofar as he assails the Commonwealth both for failing to produce Officer Hines's supplemental police report and for neglecting to inform him of the report's nonexistence. For ease of disposition, we unravel Appellant's interwoven complaints and address them separately.

First, Appellant argues that Officer Hines's testimony should have been precluded in its entirety as a discovery sanction because the Commonwealth failed to provide the supplemental police report during discovery. With a passing reference to the Sixth Amendment of the United States Constitution and Article I, § 9 of the Pennsylvania Constitution, he asserts that the juvenile court violated his confrontation rights by permitting Officer Hines to testify without the report.

In addition, Appellant relies upon Pa.R.J.C.P. 340, which governs pre-adjudicatory discovery and inspection. Specifically, Appellant invokes Rule 340(b)(5), regarding the mandatory disclosure by the Commonwealth of tangible objects and documents. In short, Appellant equates the Commonwealth's failure to provide the nonexistent supplemental police report with undisclosed tangible evidence. Id. at 16. He continues that, since Rule 340(E) gives the juvenile court discretion to prohibit a party from introducing evidence that was not disclosed during discovery, the court abused its

discretion in neglecting to bar Officer Hines's testimony in its entirety. Id. at 17-18. As Appellant phrases it, "A cross-examination of Officer Hines without his prior statement—a police report with the events in this case—is meaningless [because] without the relevant police report, [defense] counsel lack[ed] any critical means to challenge Officer Hines' testimony[.]" For the following reasons, we disagree.

Appellant's contention belies his understanding of Rule 340 and its objective of encouraging the disclosure of evidence in the interest of justice. See Rule 340 comments to (A)-(E). Appellant's attempt to force the application of Rule 340(E) sanctions to this situation is illogical. The sanction is designed to prompt the disclosure of existing evidence. It is not aimed at situations where, as here, a witness testified to the fact-finder's satisfaction that a document does not exist. The juvenile court's observation is instructive,

> With respect to the facts in this particular case, there is no evidence to suggest that the Commonwealth withheld, either intentionally or not, a supplemental police report. Officer Hines's explanation was both plausible and credible. This court finds that there was no bad faith by the Commonwealth, either through the Assistant District Attorney or the City of Pittsburgh Police, to withhold or mislead the appellant about [the] existence of a supplemental report. Officer Hines testified solely by memory and the appellant had ample opportunity to cross-examine him. As [the officer] reported, he had made a number of arrests and prepared a number of police reports since the incident in question. There was no supplemental report to provide to the appellant prior to trial and as such, he suffered no prejudice as it relates to any pretrial investigation or trial preparation. As such, the appellant's claim that Officer Hines's testimony violated appellant's due process rights must not stand.

Juvenile Court Opinion, 1/25/19, at 7.

We agree with this rationale. The juvenile court made a credibility determination in favor of Officer Hines's representation that, despite his prior indication, he did not draft a supplemental police report, and because the record sustains the court's determination, we will not disturb it. In re C.S., 63 A.3d 351, 357 (Pa.Super. 2013) ("Conflicts in the evidence and contradictions in the testimony of any witnesses are for the fact finder to resolve."). Once the predicate discovery violation dissolved, there was no basis for the trial court to preclude Officer Hines's substantive testimony as a sanction pursuant to Rule 340(E). Officer Hines was subjected to extensive cross-examination on his recollection of the incident, his pre-trial review of the arrest report drafted by Officer Vozza, and the apparent inconsistencies among his memory, the prior testimony, and the arrest report. N.T., 5/18/17, at 91-93, 95-97. While Appellant additionally desired to impeach Officer Hines with the phantom supplemental police report and criticized the Commonwealth for failing to achieve the impossible and produce it, that document simply does not exist.

Next, we address the aspect of Appellant's contention that assails the Commonwealth's failure to inform him prior to the second adjudication that Officer Hines had not drafted a supplemental police report. The crux of this contention is that, by neglecting to advise Appellant before trial that the supposed report did not exist, the Commonwealth "foreclos[ed] the possibility

of any meaningful pretrial investigation or cross-examination of [Officer Hines] by defense counsel at trial." Appellant's brief at 12. However, since Appellant neglected to develop this aspect of his legal argument or cite to relevant authority to support his proposition, it is waived. See J.J. DeLuca Co., Inc. v. Toll Naval Assocs., 56 A.3d 402, 412 (Pa.Super. 2012).

Furthermore, assuming, arguendo, that this issue was preserved for our review, Appellant failed to establish that the juvenile court erred in declining to preclude Officer Hines's testimony because the Commonwealth neglected to update Appellant prior to trial. We observe that Officer Hines was subject to adroit cross-examination by Appellant's counsel, who not only challenged the officer's recollection of the events leading to Appellant's arrest, but also interrogated Officer Hines about his prior statement that he drafted a supplemental police report, and assailed his credibility for testifying inconsistently with the prior statement. N.T., 5/18/17, at 91, 92-93, 96-97. Moreover, counsel revisited all of these points during summation. Id. at 99-104. Tellingly, Appellant does not even attempt to explain how he was prejudiced by the omission in light of counsel's thorough cross-examination about the phantom report. Indeed, Appellant acknowledges, "undersigned counsel prepared for trial with the understanding that Officer Hines had no written police reports in the matter[.]" Appellant's brief at 12. As Appellant had access to the evidence that the Commonwealth actually presented during the hearing, prepared for trial accordingly, and highlighted the inconstancies

and defects in Officer Hines's testimony, he was afforded a meaningful opportunity to present his defense. Hence, the juvenile court did not err in precluding the entirety of Officer Hines's testimony simply because the officer previously misstated that he drafted a supplemental police report on the evening of the incident. No relief is due.

Appellant's second issue concerns the juvenile court's decision to overrule his hearsay objection to the introduction of a recording of Ms. Pasko's telephone call to 911 based upon the excited utterance and/or the present sense impression exceptions to the rule against hearsay. Specifically, Appellant asserts that the Commonwealth failed to lay the proper foundation to sustain the court's application of either exception. Unfortunately for Appellant, the portion of his argument that he dedicated to challenging the application of the excited utterance exception is waived because he omitted that issue from both the statement of questions involved and the Rule 1925(b) statement.[4] See Commonwealth v. Einhorn, 911 A.2d 960, 969 n.2 (Pa.Super. 2006); Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved of is fairly suggested thereby."); Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement

_____

[4] As the issue was not raised in the Rule 1925(b) statement, the juvenile court did not have the opportunity to confront it. The juvenile court's opinion only addressed its application of the hearsay exception for present sense impressions.

- 10 -

. . . are waived."). Accordingly, we do not address this aspect of Appellant's argument herein.

We address Appellant's remaining hearsay claim mindful of our well-ensconced standard of reviewing a trial court's decision to admit or exclude evidence for an abuse of discretion. In re A.J.R.-H., 188 A.3d 1157, 1167 (Pa. 2018). A court commits an abuse of discretion if it overrides or misapplies the law, exercises manifestly unreasonable judgment, or issues a decision that is the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. Id.; Interests of T.M.A., __ A.3d __, 2019 WL 1415196, *4 (Pa.Super. 2019).

Concerning the rule against hearsay outlined in Pa.R.E. 802, our High Court recently stated,

> "Hearsay" is "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c). Under the Pennsylvania Rules of Evidence, hearsay evidence is incompetent and inadmissible unless it meets an exception set forth in the Rules or one prescribed by this Court or statute.

In re A.J.R.-H., supra at 1167.

The hearsay exception for a present sense impression applies to "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Pa.R.E. 803(1). In Commonwealth v. Cunningham, 805 A.2d 566, 573 (Pa.Super. 2002), this Court sustained a trial court's application of the present sense impression

exception in order to admit into evidence a transcript of a 911 call reporting a

robbery.  Thereafter, we summarized the following relevant principles:

> The observation must be made at the time of the event or shortly thereafter, making it unlikely that the declarant had the opportunity to form an intent to misstate his observation. Consequently, the trustworthiness of the statement depends upon the timing of the declaration.  Commonwealth v. Gray, 867 A.2d 560, 570 (Pa.Super. 2005).
>
> The rationale for this exception is that the "relative immediacy of the declaration insures that there will have been little opportunity for reflection or calculated misstatement." Commonwealth v. Coleman, 458 Pa. 112, 116, 326 A.2d 387, 389 (1974).  "In addition, the present sense impression does not require that the comments be made to another person also present at the scene, but may be made over the telephone." Cunningham, 805 A.2d at 573.

Commonwealth v. Hood, 872 A.2d 175, 183 (Pa.Super. 2005).

Accordingly, consistent with the foregoing case law, a call to 911 may

qualify as present sense impression if the statement is reported

contemporaneously with the event or so instantaneous "that it is unlikely that

the declarant had the opportunity to form the purpose of misstating his

observation."  Cunningham, supra at 573 (quoting Commonwealth v.

Young, 748 A.2d 166, 177 (Pa. 1999)).  Unlike the excited utterance

exception, however, the "declarant need not be excited or otherwise

emotionally affected by the event or condition perceived."  Pa.R.E. 803(1),

cmt.

Instantly, Appellant challenges the passage of time between the robbery

and the telephone call to 911.  Appellant's brief at 21.  He contends that, by

taking the time to engage with onlookers to discern the name of the

surrounding neighborhood prior to calling for emergency assistance, Ms. Pasko had the opportunity to gain her composure and reflect on the incident. Id. In support of this position, Appellant highlights the fact that the Commonwealth did not introduce the 911 call log, disclose the precise time of the call, or "establish how long the complainant waited to make the call." Id. In sum, Appellant complains, "[t]he Commonwealth's lack of foundation denie[d] [Appellant] the opportunity to fully consider and cross-examine the complainant regarding her demeanor at the time the 911 call was made." Id.

In rejecting Appellant's argument, the juvenile court emphasized that Ms. Pasko credibly testified that she called 911 nearly contemporaneous with the robbery. The certified record supports this finding. See N.T., 5/18/17, at 14, 27. Indeed, Ms. Pasko informed the court that she called the police from the scene of the robbery "seconds if not a minute" after Appellant fled, and while she was still sitting on the ground. Id. at 14. Moreover, contrary to Appellant's protestations in his brief, the juvenile court accurately observed that Ms. Pasko was, in fact, subjected to cross-examination by Appellant regarding, inter alia, the emergency call to 911. Id. at 27-28. Hence, the Commonwealth presented foundational evidence to demonstrate that it was unlikely that Ms. Pasko could have "form[ed] the purpose of misstating [her] observation." Cunningham, supra at 573. As the certified record sustains the juvenile court's conclusion that the Commonwealth laid a foundation for the recording's admission into evidence under Rule 803, we will not disturb it.

Appellant's final issue relates to the Commonwealth's closing argument. He asserts that the juvenile court erred in overruling his objection to the Commonwealth's reference to the fact that, although Appellant argued that the photographs of his image belied the witnesses' testimony that he wore a unique hairstyle, the "[d]efense didn't cross [the witnesses] about [the] arrest photo." N.T., 5/18/17, at 110. Appellant characterizes the Commonwealth's reference to the defense's trial strategy as shifting the burden upon him to prove his innocence, and therefore, violated his constitutional rights. Appellant's brief at 23-24.

The juvenile court concluded that Appellant's assertion was meritless because the Commonwealth's comments were not prejudicial. It reasoned, "Any remarks made during closing arguments did not rise to the level that would destroy the impartiality and objectivity of the factfinder." Trial Court Opinion, 1/25/19, at 10. We agree.

Appellant's claim that the Commonwealth shifted the ultimate burden of proof upon him to prove his innocence is more daring than convincing. As the ultimate arbiter of fact, the juvenile court was positioned to determine whether the reference to defense counsel's cross-examination affected its ability to render an impartial decision. The juvenile court was free to accept or reject any part of the witnesses' testimony, including the testimony that characterized Appellant's hairstyle as unique. Appellant attempted to impeach that aspect of the testimony in his closing argument, and the Commonwealth countered by highlighting the fundamental flaw in Appellant's argument, i.e.,

the absence of evidence to support the insinuation that the witnesses were mistaken. Appellant's claim fails.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/11/2019