J-A19030-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: N.A.D., A MINOR. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: N.A.D., A MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 335 EDA 2020 |

Appeal from the Dispositional Order Entered November 15, 2019
In the Court of Common Pleas of Monroe County Juvenile Division at
No(s): CP-45-JV-0000147-2019

BEFORE: PANELLA, P.J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED NOVEMBER 06, 2020**

N.A.D. appeals from the dispositional order entered on November 15, 2019, following his adjudication of delinquency for Theft by Unlawful Taking.[1] N.A.D. challenges the sufficiency of the evidence to sustain his adjudication. We affirm.

The juvenile court accurately recounted the facts as follows:

> On July 16, 2017, Jerome Lynn ("Mr. Lynn"), the victim, was attending an offroad race with his motocross club, Valley Forge Trail Riders. Mr. Lynn, who resides in Effort, Pennsylvania, has over 45 years of experience with motorbikes. Mr. Lynn transported his motorbike in a trailer to the event. After the conclusion of the race Mr. Lynn loaded his motorbike into his trailer and transported the bike back to his house. Mr. Lynn testified that he typically backed his trailer, which contained the bike and racing gear, up against his garage in order to prevent the doors of the trailer

_____

[1] 18 Pa.C.S.A. § 3921(a).

from being opened because of his mistrust in locking devices. Due to being tired from the event, Mr. Lynn did not back the trailer against the garage and instead parked it in his driveway.

When Mr. Lynn woke next morning he looked outside a window in his house to see that the doors of the trailer were "swinging open in the wind." Mr. Lynn investigated the back of the trailer only to find that the tie-down straps, which held the bike in place while in transit, were cut and the bike was missing. Also taken was a large duffel bag containing 60-70 pounds of gear. An itemized list was provided to the court with an estimated loss of $5,685.74 due to the theft.

Mr. Lynn was able to discern that the foldable ramp which he used to take the bike on and off the trailer was not used. The bike weighed 250 pounds and would take two (2) people to lift it off the trailer without using the ramps. Mr. Lynn was able to track the path the bike took away from the trailer where it was pushed over his neighbor's yard and about 150 to 250 feet where he assumed the bike was started and driven away. Mr. Lynn suspected that the thieves knew the bike was fuel-injected and not carbureted because a "carbureted bike cold won't pull out. It won't leave." He also suspected that it was at this point the bike was started and driven away on the main road and the helmet was discarded.

Trooper Gabriel Saracino, employed by the State Police at Fern Ridge, was called to Mr. Lynn's residence after he reported that his bike and some of his gear was stolen. As part of his investigation Trooper Saracino had a member of the forensics team respond to the location in order to search for fingerprints. A palm print was found in the rear of the trailer door. The palm print was lifted, put into evidence, and sent to the Wyoming Lab in order for analysis. Based upon the report developed by Wyoming Lab a suspect was identified as [N.A.D.].

Trooper Mark Mulvey ("Mr. Mulvey"), a forensic scientist at Wyoming Regional Crime Lab was admitted as an expert in the field of latent print analysis after voir dire examination. Mr. Mulvey received the palm print at the lab, examined it, and determined it was suitable to be compared against a known source. Mr. Mulvey testified that he used the ACE-V

methodology and that every decision was verified by a second independent latent print examiner. It was determined that the print was suitable for comparison, then enhanced in Photoshop, and finally searched for a match in Pennsylvania Automated Fingerprint Identification System ("AFIS").

The level of quality of the print was a "beautiful print" and came back with a candidate list of 24 candidates. It is a list of 24 possible searches to compare. Mr. Mulvey clarified that [N.A.D.] was the number one candidate, and upon further analysis using the ACE-V methodology, identified as [N.A.D.'s] print. Mr. Mulvey stated the print on the trailer was a "fantastic print, palm print. You don't get them like that sometimes."

Trooper Saracino received the report from Wyoming Lab identifying [N.A.D.] and followed upon by making contact with [N.A.D.]. Trooper Saracino testified that he did a cursory look around the home of [N.A.D.] and interviewed him. [N.A.D.] denied having to do anything with the theft and the stolen property is still unrecovered as of this day. The trooper also testified that [N.A.D.] was currently on probation for fleeing and eluding on a dirt bike. [N.A.D.] clarified the prior incident was on a four-wheeler.

Juvenile Court Opinion, filed Dec. 16, 2019, at 1-4 (internal citations omitted).

N.A.D. was charged with Theft by Unlawful Taking of Movable Property, a felony in the third degree, both as a principal and an accomplice.[2] Following a hearing on November 15, 2019, the juvenile court adjudicated N.A.D. delinquent and ordered him to serve a period of probation to run concurrent to his current probation, and to make restitution. N.A.D. filed a petition for

---

[2] Theft by Unlawful Taking of Movable Property is defined as follows: "A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." 18 Pa.C.S.A. § 3921(a).

reconsideration, which was ultimately denied on December 16, 2019. This appeal followed. N.A.D. raises one issue for our review:

> Did the court abuse its discretion by adjudicating [N.A.D.] delinquent when the only evidence presented was finger prints found on a readily movable [object] in common usage?

N.A.D.'s Br. at 4.

N.A.D. challenges the sufficiency of the evidence to support his adjudication of delinquency. N.A.D. argues that the evidence of a mere palm print on a readily movable object alone was insufficient to find him delinquent of Theft by Unlawful Taking. N.A.D.'s Br. at 7. According to N.A.D., "The fact [that his] palm print was recovered at most can establish at some point he had contact with the trailer, but due to a trailer being a readily movable [object] in common use after being at a public event over the course of a weekend, the chance of the contact being innocent makes this sole evidence insufficient as a matter of law." *Id.* N.A.D. contends that although the print evidence from the outside of the trailer could raise a reasonable inference that he made contact with the trailer at some point, the evidence showed "mere presence at the scene of a crime," which is not enough to establish that he committed a crime or was an active participant in one. *Id.* at 11.

When reviewing a challenge to the sufficiency of the evidence, our standard of review is *de novo*, and "our scope of review is limited to considering the evidence of record, and all reasonable inferences arising therefrom, viewed in the light most favorable to the Commonwealth as the

verdict winner." ***Commonwealth v. Rushing***, 99 A.3d 416, 420-21 (Pa. 2014). "When a juvenile is charged with an act that would constitute a crime if committed by an adult, the Commonwealth must establish the elements of the crime by proof beyond a reasonable doubt." ***Interest of D.J.B.***, 230 A.3d 379, 386 (Pa.Super. 2020) (quoting ***In re A.V.***, 48 A.3d 1251, 1252 (Pa.Super. 2012)). The Commonwealth may sustain its burden by means of wholly circumstantial evidence. ***Commonwealth v. Dix***, 207 A.3d 383, 390 (Pa.Super. 2019). The hearing judge in a juvenile delinquency proceeding sits as the finder of fact, and in that capacity, "as sole assessor of credibility, may believe all, part or none of the evidence presented." ***In re Love***, 646 A.2d 1233, 1237 (Pa.Super. 1994). "The hearing judge's findings will not be reversed by this Court unless it appears that he has clearly abused his discretion or committed an error of law." ***Id.***

In ***Commonwealth v. Donahue***, 62 A.3d 1033 (Pa.Super. 2013), this Court examined the sufficiency of the evidence in a case where the only evidence supporting the defendant's identity as the person who committed a burglary consisted of fingerprints discovered at the scene of the crime. The Commonwealth had presented evidence that the defendant's fingerprints were on an opened soda bottle that was inside the burglarized residence. ***Id.*** at 1035. The homeowner testified that the soda bottle was unopened in a kitchen cabinet when she left the home the night before. However, she said that when she returned the next day, the soda bottle was open and in the basement with

most of its contents consumed. *Id.* at 1034. The owner of the home maintained that she did not know the defendant. *Id.* at 1035.

We affirmed the judgment, finding that the fingerprint evidence was sufficient to sustain the conclusion that the defendant was the individual who had burglarized the home. *Id.* at 1037-38. In doing so, we comprehensively discussed our prior cases that evaluated whether fingerprint evidence alone was sufficient proof to sustain a conviction:

> In the seminal decision of ***Commonwealth v. Cichy***, [323 A.2d 817, 818 (Pa. Super. 1974)] we observed that "the accuracy of fingerprint evidence for purposes of identification" is established and that "the probative value of that evidence depends entirely on the circumstances of each case. Unless those circumstances are such that the fingerprint could only have been impressed at the time and place the crime was committed, such evidence is insufficient to sustain a conviction." On the other hand, where "circumstances indicate impression at [the time of the crime], and the defendant's innocent presence is excluded, such evidence has been held sufficient to convict." ***Id.*** at 819.
>
> Under these precepts, a conviction will be upheld "where fresh fingerprints are found at the place of illegal entry to private burglarized premises where a defendant's presence is unexplained." ***Id.*** at 818. Similarly, if the prints are discovered in a place accessible only by force or on objects that the defendant could not have contacted under legitimate circumstances, a conviction will be upheld. ***Id.*** However, "the mere discovery of prints in a public place with which a number of people may have had innocent contact is insufficient by itself to convict." ***Id.*** Additionally, if the prints are located on a readily movable object in common usage and the possibility of innocent contact with that object is great, the conviction will not be sustained. ***Id.***
>
> A comparison of the fingerprint cases established the uniform application of these principles. In ***Cichy***, the

defendant was convicted solely based on the fact that his fingerprints were discovered on a cigarette pack located next to a vending machine in a public venue that was burglarized. We ruled that the conviction was infirm, given that the defendant admittedly had visited the scene of the burglary during normal business hours before the date of the burglary, no prints were discovered on the cigarette machine, and there was no indication that the cigarette package with the defendant's prints was taken from the machine. Thus, in *Cichy*, there was an innocent explanation for the presence of the prints on the package, which could have been left behind when the defendant was on the premises during business hours. We concluded that the discovery of prints on a movable object in a public venue is insufficient to establish a person's presence at the crime scene during the commission of the crime.

In the case of *In re M.J.H.*, 988 A.2d 694 (Pa.Super. 2010), we applied *Cichy* and reversed an adjudication of delinquency that was premised upon the juvenile's commission of acts constituting burglary and theft. In that case, a clothing store was ransacked and burglarized, and the juvenile's fingerprints were discovered on a clothing rack readily accessible to the public, but not at or near the point of illegal entry into the store. Additionally, evidence was presented that, on two or three occasions before the burglary, the juvenile was present in the store during normal operating hours.

We observed that the juvenile's fingerprints were discovered at a location where his presence was explained through innocent behavior and from an object with which he could have had legitimate contact. We concluded that the possibility that the juvenile had made innocent contact with the clothing rack was too great to permit a determination that he was the person who ransacked and burglarized the store. *See also Commonwealth v. Henry*, 875 A.2d 302 (Pa.Super. 2005) (defendant improperly convicted of unauthorized use of a vehicle where lone evidence against him was that his fingerprints were found on movable object inside vehicle; such proof established only that the defendant had been present in vehicle at some point and was not sufficient to establish that he used the car without permission).

- 7 -

Conversely, in numerous cases, we have upheld the sufficiency of the evidence supporting a conviction premised solely on the fact that the defendant's fingerprints were at the scene of the crime. Pursuant to these decisions, imprints constitute sufficient evidence so long as the facts of the crime eliminate an innocent explanation for the presence of the defendant's fingerprints on an object.

***

Herein, there was no innocent explanation for the presence of Appellant's fingerprints on the soda bottle located at the crime scene. The burglarized premises were a private residence, and Appellant, unknown to the owner, had no right to be located there. The proof also established that the impression on the soda bottle, even though movable, was made during the burglary. The bottle was in a kitchen cabinet and unopened at 6:00 p.m. on June 20, 2010, when the owner locked the door and closed the windows to her property. The item was found in the basement, opened, and partially consumed sixteen hours later. The burglary occurred during those hours. When discovered on June 21, 2010, the bottle had two imprints, a thumb and forefinger, which were identified as those of Appellant. Under the precepts applicable to fingerprint evidence, Appellant's convictions therefore are not infirm.

*Donahue*, 62 A.3d at 1035-1038.

Instantly, viewing the evidence in the light most favorable to the Commonwealth, as the prevailing party below, the evidence was sufficient to sustain N.A.D.'s adjudication of delinquency. N.A.D.'s palm print was found on a private trailer that was parked on private property. As in *Donahue*, this case involved private property not open to the public and N.A.D. was unknown to the victim. The juvenile court found that there was no innocent explanation for the presence of N.A.D.'s palm print on the private trailer parked on a private driveway. Juv. Ct. Op. at 5, 7. The court noted that although N.A.D.

took the stand and denied that he took the motorbike and equipment, he offered no explanation as to why his palm print was on the trailer. *Id.* at 5. The court found that "[t]he trooper testified convincingly that to open the rear doors of the trailer, it would likely be necessary to place one's hand in the location of [N.A.D.'s] palm print, in order to open the latch on the swinging doors." *Id.* Thus, the palm print was found on the point of entry, demonstrating that it was not "innocent" contact but rather was indicative of a person trying to open the door of the trailer.

Further, the court inferred that the print was "fresh," and explained that "the testimony of the trooper from the forensic lab was compelling in that the palm print was of 'fantastic' quality, when you would expect outside conditions of dirt and water to compromise the print over time." *Id.* at 6. This was a reasonable conclusion, since outside conditions would have weakened the quality of the print, yet the palm print was found to be a "fantastic" and "beautiful" print. *See* N.T., 11/15/19, at 22, 26. The trial court did not err in finding that there was sufficient evidence to adjudicate N.A.D. delinquent for Theft by Unlawful Taking. Accordingly, we affirm the order of disposition.

Order affirmed.

Judgment Entered.

*[signature]*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/6/20