J-S34001-25
J-S34002-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.N.O., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.N.O. | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 863 MDA 2025 |

Appeal from the Order Entered June 17, 2025
In the Court of Common Pleas of Centre County
Juvenile Division at No: CP-14-JV-0000048-2023

| | | |
|---|---|---|
| IN THE INTEREST OF: S.N.O., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.N.O., A MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 880 MDA 2025 |

Appeal from the Order Entered June 17, 2025
In the Court of Common Pleas of Centre County
Juvenile Division at No: CP-14-JV-0000075-2022

BEFORE: STABILE, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY STABILE, J.: **FILED: FEBRUARY 13, 2026**

In these two related appeals, which we resolve together for ease of disposition, S.N.O., a minor (Appellant), seeks review of orders of the Court of Common Pleas of Centre County Juvenile Division (the juvenile court)

placing her in a residential treatment facility.[1]  On October 28, 2022, when Appellant was 12 years old, she pleaded guilty to one count of receiving stolen property.  For the past three years, she has remained under court supervision due to ongoing struggles with drug use, poor academic performance, and other troubling behaviors which have hindered her rehabilitation.  On June 17, 2025, the juvenile court ruled that Appellant's placement in an out-of-home facility was the least restrictive means of placement which would be consistent with the protection of the community, and best suited to Appellant's rehabilitation, supervision, and treatment.  Appellant now contends that the juvenile court abused its discretion by failing to consider a less restrictive alternative, and laying an inadequate record justifying its ruling.  Finding no such abuse of discretion on the part of the juvenile court, we affirm.

Appellant first came under court supervision about three years ago.  At an adjudicatory hearing held on October 28, 2022, Appellant admitted to receiving stolen property (18 Pa.C.S.A. § 3925).  The underlying incident was the alleged robbery of a concession stand involving Appellant and other juveniles.

The juvenile court held a dispositional hearing on December 20, 2022, and Appellant was placed on supervision for six months, in accordance with a consent decree.  The juvenile court ordered Appellant to complete any

___

[1] At both of the above-captioned docket numbers, Appellant seeks review of an identical dispositional review order entered by the juvenile court on June 17, 2025.

- 2 -

counseling deemed appropriate and to follow any treatment recommendations. She was also ordered to complete the "JUMP" program through the Centre County Youth Service Bureau.

On June 20, 2023, the juvenile court held a consent decree review hearing at which it was determined that Appellant had violated the terms and conditions of her consent decree in failing to make payments, resulting in a six-month extension of the consent decree. At subsequent consent review hearings held on December 18, 2023, and February 16, 2024, the juvenile court determined that Appellant had violated the terms of the consent decree by failing drug screens and not complying with the rules and attendance policies of Appellant's school district.

At the latter hearing, the juvenile court revoked the consent decree, finding that Appellant needed a higher level of treatment, supervision, or rehabilitation. Appellant was adjudicated delinquent and ordered to complete 12 hours of community service, complete the "What Got Me Here" Forward Thinking Journal, complete counseling, and follow any treatment recommendations.

On May 9, 2024, it was again found by the juvenile court that Appellant was not meeting the terms and conditions of the disposition. Appellant was continuing to struggle academically and behaviorally, and she continued to fail drug screens. The Commonwealth, Appellant, and Appellant's counsel formed an administrative agreement for Appellant to enroll with Strawberry Fields for

Blended Case Management, and to comply with the terms of previous court orders.

Once more, on June 7, 2024, the juvenile court determined at a dispositional review hearing that Appellant was continuing not to meet the terms and conditions of supervision. She failed drug screens, was not following curfew, and received summary citations. The juvenile court ordered Appellant to be placed on in-home detention/electronic monitoring for at least 60 days.

Appellant was detained at the Central Counties Youth Center (CCYC) on June 28, 2024, pursuant to section 120 of the Juvenile Act's Standards Governing the Use of Secure Detention. Appellant had continued to fail drug tests, and she received summary citations for an incident that occurred in her home.

On July 2, 2024, the juvenile court held a post-adjudicatory detention/shelter care hearing at which Appellant was ordered to remain at CCYC. The juvenile court found that it was contrary to Appellant's welfare for her to return home, and reasonable efforts were made to avoid the removal of Appellant from her home. At the next dispositional review hearing, held on July 22, 2024, the juvenile court ordered Appellant to remain at CCYC until she could be placed at Clear Vision Residential Treatment Services, on July 31, 2024.

The juvenile court found that Clear Vision was the least restrictive type of placement that was consistent with the protection of the public and the

rehabilitative needs of Appellant. At hearings held on November 14, 2024, and January 10, 2025, the juvenile court ordered Appellant to remain at Clear Vision, as this placement continued to be necessary or appropriate for Appellant's needs.

On February 10, 2025, the juvenile court held a dispositional review hearing at which Appellant was released from Clear Vision into the care and custody of her mother, as Appellant had completed that residential treatment program. The juvenile court ordered Appellant to be placed on probation and to avail herself of Centre County Youth Service Bureau Reunification Services. Appellant subsequently tested positive for marijuana, and on April 8, 2025, the juvenile court ordered Appellant to remain on probation.

Finally, on June 17, 2025, the juvenile court held a dispositional review hearing. The evidence presented at the hearing established that Appellant continued to struggle behaviorally. She was skipping school and attending school while under the influence of marijuana, which she was receiving from a woman in her mid-20's. Appellant also had been exhibiting other concerning behaviors, such planning to run away from home, and sending sexually explicit photos of herself to others.

It was reported by agents of Reunification Services that Appellant would often try to provoke her mother into physical altercations. *See* Trial Court 1925(a) Opinion, 8/29/2025, at 8. All of these circumstances prompted Appellant's juvenile probation officer, Mattea L. Dunn, to recommend that she should be placed in a residential treatment facility. *See id*.

Due to these behaviors, and the recommendation of Appellant's probation officer, the juvenile court ordered Appellant to be placed on in-home detention/electronic monitoring until a bed became available at a residential treatment facility. At the conclusion of the dispositional hearing held on June 17, 2025, the juvenile court stated as follows:

> I've known you for a while and I've seen you struggling for a while with your drug use and doing what you need to be doing. I appreciate that you are reaching out for help, but I feel like I wouldn't be giving you the help that you deserve if I didn't follow the recommendation to have you on the ankle bracelet, the electronic monitoring and enter into a residential treatment facility.
>
> I'm hopeful that you don't need to be there long. Okay? We get good reports and you do what you're supposed to do and it will be a period of time that you can be clean and flush that marijuana out of your system and hopefully find things that you enjoy that aren't marijuana related and we can get you out of there and back home with mom and into a job. But for now, I feel like that's the most appropriate place for you to help you out. Okay?
>
> I want you to be able to work on these things while you're 15 so we can get you into a healthy situation as you move forward.

N.T. Dispositional Hearing, 6/17/2025, at 12-13.

In its dispositional review orders,[2] the juvenile court made the following findings:

**REASON FOR HEARING**

DISPOSITIONAL REVIEW - This hearing is to ensure that the juvenile is receiving necessary treatment and services and that

---

[2] Separate orders were entered in each of the juvenile's two cases, and the content of the orders was identical.

> the terms and conditions of the disposition are being met, pursuant to Pa.R.J.C.P. 610(A).
>
> APPROPRIATENESS OF DISPOSITION
> The current disposition provides balanced attention to the protection of the community, the imposition of accountability for offenses committed and the development of competencies to enable the Juvenile to become a responsible and productive member of the community.
>
> NECESSARY TREATMENT AND SERVICES
> The Juvenile is receiving the necessary treatment and services.
>
> REASONS FOR DISPOSITION
> The reasons for the disposition are as follows: The juvenile is in need of a higher level of treatment' supervision, and/or rehabilitation.

Juvenile Court Dispositional Review Order, 6/17/2025, at 1.[3]

The juvenile timely appealed on June 27, 2025.[4] Both the juvenile and the juvenile court complied with Pa.R.A.P. 1925. Significantly, in its 1925(a) opinion, the juvenile court further elaborated on the reasons for Appellant's placement:

> **<u>The most significant reason for the Court's decision to place Appellant at a residential treatment facility is her rehabilitative needs</u>. Despite the over 2 years during which Appellant has been on supervision, she continues to ingest marijuana (daily by her early June 2025 admission to Officer Dunn), to defy rules designed for her own personal, medical and emotional safety, and to skip school thereby**

---

[3] It was further ordered that the juvenile would have to return to court within 90 days for a dispositional review hearing. On July 8, 2025, at the following dispositional review hearing, the juvenile court ordered Appellant to be placed in the residential treatment facility of Adelphoi Village, effective, July 10, 2025.

[4] The juvenile has not filed a petition for specialized, expedited, review of the juvenile court's order under Pa.R.A.P. 1612.

**impeding her academic success. <u>Electronic monitoring was attempted to quell Appellant's behaviors, but she violated the monitoring</u>. Appellant has continued to connect with older people to provide her with marijuana, to engage in inappropriate sexual communications and activities, and to <u>possibly plan an escape</u>. The Court feels that placing Appellant in a residential treatment facility where she can receive treatment for her marijuana use and mental health struggles is the most appropriate setting for Appellant to obtain the help she needs to become a responsible and productive member of the community.**

Given Appellant's defiance while at her mother's home, which as Officer Dunn testified involves provoking Appellant's mother and attempting to get into a physical altercation, and Appellant's **failure to conform while on electronic monitoring**, the Court determined that placement in a juvenile treatment facility is the least restrictive placement consistent with protection of the public and best suited for Appellant's treatment, supervision, rehabilitation and welfare. **This decision was not made lightly or swiftly. Instead, it was made after Appellant received a multitude of services in the community but continued to violate her supervision.**

Appellant was encouraged to use coping skills from the Clear Vision program. She was also offered voluntary substance use/addiction treatment. CYS became involved and coordinated with JPO due to concerns with Appellant's behavior. The Youth Service Bureau reunification team worked closely with Appellant and her mother, attempting to set limits around Appellant's phone use and inappropriate communications. Despite these interventions, Appellant's problematic behaviors continued. **She continued to send inappropriate messages, planned to run away, engaged in sexual behavior at school, and tried to provoke her mother into physical confrontations. <u>Appellant's mother also reported that she could no longer manage her daughter's behavior, which further reinforced the need for a more structured placement.</u>**

**Appellant's inappropriate behaviors have continued to occur both out of school and in school, and while off electronic monitoring and on electronic monitoring.** As testified to by Officer Dunn at the hearing on June 17, 2025, Appellant's service providers (CYS, reunification, and JUMP/Youth

Service Bureau) feel that they have hit a **"brick wall"** with Appellant. Also as testified to by Officer Dunn, Appellant revealed that she is really struggling to stop using marijuana and it's affecting her mental health. While the Court empathizes with Appellant in wanting to remain at home, **the Court feels that it would be doing Appellant a grave disservice by allowing her to remain there at this time, as she is much less likely to become a responsible and productive member of the community if Appellant does not receive the mental health care and drug treatment she both needs and deserves.** The Court hopes that through this placement, Appellant can reintegrate as a productive member of society sooner rather than later.

Trial Court 1925(a) Opinion, 8/28/2025, at 10-12 (emphasis added).

In her briefs in both of the two related cases, the juvenile raises a single identical issue: "Did the trial court abuse its discretion in ordering the removal of juvenile from her home?" Appellant's Brief, at 4. The juvenile contends more specifically that the juvenile court abused its discretion by failing to adequately state on the record its findings and conclusions of law that formed the basis for its decision that a less restrictive alternative placement was not available. *See* Appellant's Brief, at 11-14.[5]

"The Juvenile Act grants juvenile courts broad discretion when determining an appropriate disposition." *In re C.A.G.*, 89 A.3d 704, 709 (Pa. Super. 2014). On review, this Court will not disturb a sentence in juvenile

_____

[5] The record does not indicate whether Appellant has since been released from out-of-home placement. We will therefore presume that Appellant remains in placement. Regardless, even if Appellant was released, we would not consider this appeal to be moot for the same reasons as those expressed in *Interest of N.E.M.*, 311 A.3d 1088, 1095-1096 (Pa. 2024) (finding appeal to be excepted from mootness doctrine because the issue presented was of "great public importance," as well as "capable of repetition yet evading review").

delinquency proceeding absent a manifest abuse of discretion or a clear error law.  *See In re L.A.*, 853 A. 2d 388, 394 (Pa. Super. 2004).

Section 6352(a) of the Juvenile Act mandates that a juvenile court's disposition must "be consistent with the protection of the public interest and best suited to the child's treatment, supervision, rehabilitation and welfare[.]" 42 Pa.C.S.A. § 6352(a).  The juvenile court must "provide balanced attention to the protection of the community, the imposition of accountability for offenses committed and the development of competencies to enable the child to become a responsible and productive member of the community." *Id*.

Section 6301 of the Juvenile Act specifies that a child should be separated from a parent or guardian "only when necessary for his [or her] welfare, safety or health or in the interests of public safety [.]" 42 Pa.C.S.A. § 6301(b)(3).  The Juvenile Act requires the juvenile court to employ "the least restrictive intervention that is consistent with the protection of the community, the imposition of accountability for offenses committed and the rehabilitation, supervision and treatment needs of the child." 42 Pa.C.S.A. § 6301(b)(3)(i).

A juvenile receives a proper dispositional hearing where, "at hearing, the court considers reports of the probation officer, the Youth Center, and the psychological and psychiatric evaluations which satisfies the due process requirements of 42 Pa.C.S.A. § 6301(b)(4)."  *In re Love*, 646 A.2d 1233, 1238 (Pa. Super. 1994).

- 10 -

Further, the Pennsylvania Rules of Juvenile Court Procedure specify the form and content of dispositional hearings and court orders. **See generally** Pa.R.J.C.P. 512. The court's findings and conclusions of law must be entered into the record. **See** Pa.R.J.C.P. 512(D). The court must also state on the record in open court:

(1) its disposition;

(2) the reasons for its disposition;

(3) the terms, conditions, and limitations of the disposition; and

(4) if the juvenile is removed from the home:

(a) the name or type of any agency or institution that shall provide care, treatment, supervision, or rehabilitation of the juvenile;

(b) its findings and conclusions of law that formed the basis of its decision consistent with 42 Pa.C.S.A. §§ 6301, 6352, including why the court found that the out of home placement ordered is the least restrictive type of placement that is consistent with the protection of the public and best suited to the juvenile's treatment, supervision, rehabilitation, and welfare.

(c) the provision of educational services for the juvenile pursuant to Rule 148;

(5) whether any evaluations, tests, counseling, or treatments are necessary;

(6) any findings necessary to ensure the stability and appropriateness of the juvenile's education, and when appropriate, the court shall appoint an educational decision maker pursuant to Rule 147; and

(7) any findings necessary to identify, monitor, and address the juvenile's needs concerning health care and disability, if any, and if parental consent cannot be obtained, authorize evaluations and treatment needed.

*Id*.

Here, the juvenile court initially stated at the dispositional hearing on June 17, 2025, that the orders placing Appellant in an out-of-home treatment center were necessary as a last resort. **See** N.T. Dispositional Hearing, 6/17/2025, at 12-13. The juvenile court explained that Appellant been under supervision for an extended period of time, and yet was continuing to use marijuana. **See id**. She had been placed on electronic monitoring while receiving treatment at home, but violated monitoring and even planned to escape. It was the belief of the juvenile court that placing Appellant in a controlled residential facility – a higher level of treatment – would be necessary to prevent further drug use and promote her rehabilitation. **See id**.

Although the juvenile court's verbal explanation in open court, and its written dispositional order, arguably did not *strictly* conform to all of Rule 512(D)'s requirements, the juvenile court's 1925(a) opinion fully addressed what Appellant now claims to be the missing element of the disposition.[6] That is, Appellant has argued that the "record is devoid how [out-of-home placement] is the least restrictive option for Appellant." Appellant's Brief, at 13. As explained by the juvenile court, the record shows, in fact, that the

---

[6] Even assuming that the juvenile court's orders and disposition in open court fell short of the requirements of the governing procedural rules, the defect would have been cured by the juvenile court's extensive 1925(a) opinion. **See Interest of N.E.M.**, 311 A.3d 1088, 1101 (Pa. 2024) (directing case to remanded back to juvenile court for a sufficiently detailed opinion giving its reasons for out-of-home placement).

measures utilized for the past three years to help Appellant with her drug use and behavioral issues have proven inadequate. Credible evidence was presented, and cited by the juvenile court, that Appellant's progress had hit a "brick wall."

Several specific reasons were also given as to why the less restrictive placement of Appellant in her home would not be suitable. In addition to Appellant's continued drug use, and the admitted impact of that drug use on her mental health, Appellant's behavior has demonstrated consistently that, at the present time, residing with her mother is not a tenable option. There was evidence that Appellant planned to run away from home, and had gone so far as to instigate physical confrontations with her mother, who had reported that she could no longer manage Appellant's behavior. And as mentioned, Appellant already had violated electronic monitoring. Appellant's probation officer recommended that she be placed in a residential facility.

In sum, Appellant has had opportunities to engage with drug and alcohol counseling during the three years in which she has been under supervision, and if anything, her problematic behaviors have only escalated during that time. The juvenile court has, on the record and in line with procedural requirements, given sufficient reasons for ordering an out-of-home placement, and those reasons are supported by the evidence. Thus, we find no abuse of discretion, and the orders on review must be upheld.

Orders affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 02/13/2026